United States Court of Appeals
Fifth Circuit

**F I L E D**

May 19, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-50452

MARJORIE MEYERS, by Next Friend Edgar C. Benning, on behalf of herself and all others similarly situated; HELEN ELKIN, on behalf of herself and all others similarly situated; RUTH H. DAVIS, on behalf of herself and all others similarly situated; PHILLIP GREENBERG, on behalf of himself and all others similarly situated,

Plaintiffs-Appellants,

VERSUS

STATE OF TEXAS; TEXAS DEPARTMENT OF TRANSPORTATION; WILLIAM G. BURNETT, Executive Director of the Texas Department of Transportation,

Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Texas, Austin Division

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The named plaintiffs[1] originally brought this civil rights

---

[1] Marjorie Meyers, Helen Elkin, Ruth Davis, and Phillip Greenberg ("plaintiffs").

1

class action in Texas state court under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq., against defendants, the State of Texas, the Texas Department of Transportation, and William Burnett ("defendants" or "Texas"). Texas removed the case to federal district court. The federal district court remanded the case to the Texas district court. Texas filed a motion in the state district court to dismiss on grounds of state sovereign immunity. That motion was denied by the state district court, and Texas appealed the ruling to the state court of appeals. While that appeal was pending, Texas again removed the case to the federal district court and again moved to dismiss on grounds of state sovereign immunity from suit. The district court dismissed plaintiffs' claims seeking retrospective money damages and prospective injunctive relief for lack of subject matter jurisdiction on grounds that Texas enjoyed immunity from suit under the Eleventh Amendment. The plaintiffs appealed. The predominant issue is whether, in light of Lapides v. Bd. of Regents, 535 U.S. 613 (2002), Texas waived its state sovereign immunity from suit by individuals when it removed this case from state court to federal district court.

## I. Background

Congress enacted the ADA in 1990 to establish a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The

2

ADA's broad prohibitions of discrimination in public services and accommodations require accessible parking for the sight, mobility and otherwise handicapped. Texas responded to this requirement by providing persons with disabilities two means to obtain the right to use accessible parking spaces: special license plates and parking placards. TEX. TRANSP. CODE ANN. §§ 502.253, 681.002. The special license plates cost no more than regular license plates. Id. § 502.253(d). The portable placards, which afford parking access to disabled persons without specialized license plates, cost five dollars, however, and must be renewed every four years. Id. §§ 681.003, 681.004. The five dollar fee is used to defray the costs of providing the placards. Id. § 681.005(1).

Plaintiffs filed this class action suit on August 11, 1997, in the state district court for Travis County, Texas alleging that the fee collected to pay for the placard program violates regulations promulgated under Title II of the ADA as well as the ADA. ADA § 12132 states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Pursuant to congressionally granted power to promulgate regulations implementing this section, id. § 12134(a), the Attorney General formulated a "surcharge regulation":

> A public entity may not place a surcharge on a particular individual with a disability or any group of individuals

3

with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130(f). Plaintiffs alleged that by collecting a fee to pay for the placard program, Texas violated both the ADA and the surcharge regulation.

In September 1997, Texas removed the case to the federal district court for the Western District of Texas, which remanded the case *sua sponte* on the grounds that the Tax Injunction Act barred federal jurisdiction over plaintiffs' suit. The Texas state district court granted plaintiffs' motion for class certification and denied Texas's motion to dismiss because of the state's sovereign immunity. Texas appealed from that ruling to the Texas state court of appeals. While that appeal was pending, we decided in a separate case, Neinast v. State of Texas, 217 F.3d 275 (5th Cir. 2000), that the placard charges were fees, not taxes, and that "the district court erred in holding that the placard funds were a tax and thus within the scope of the Tax Injunction Act." Id. at 279.

Upon learning of our Neinast ruling, Texas removed this case from the Texas court of appeals to federal district court on July 17, 2000. Two days later, Texas moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on the grounds of Texas's Eleventh

Amendment immunity. The district court granted the motion to dismiss, holding, <u>inter</u> <u>alia</u>, that because there was "no clear guidance from the [Supreme] Court on whether removal alone constitutes waiver of Eleventh Amendment immunity," "under [then] current Eleventh Amendment jurisprudence" the state "could avail itself of federal court jurisdiction, and then seek a dismissal on Eleventh Amendment grounds." Dist. Ct. Op. of April 16, 2001 at 6. Plaintiffs timely appealed.

## II.  Analysis

We review de novo a district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction because of state sovereign immunity.  <u>United States v. Texas Tech University</u>, 171 F.3d 279, 288 (5th Cir. 1999).

## A. <u>Waiver of State Sovereign Immunity From Private Suit</u>

State sovereign immunity is a fundamental aspect of the sovereignty that the states enjoyed before the ratification of the Constitution and the Eleventh Amendment, and it was preserved intact by the Constitution.  <u>Alden v. Maine</u>, 527 U.S. 706, 713 (1999).  The presupposition or concept of state sovereign immunity "has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."  <u>Florida Prepaid Postsecondary Educ. Expense Bd. v.</u>

5

College Savings Bank, 527 U.S. 627, 634 (1999)(quoting Hans v. Louisiana 134 U.S. 1, 13 (1890)).  The term "state sovereign immunity" is used imprecisely by the courts to refer to both parts, i.e., the immunity from suit, and the entity itself, including all of its powers, rights and privileges.  See Alden, 527 U.S. at 712-13.  Because the Eleventh Amendment recognizes a State's sovereign immunity from suits brought by individuals in federal court, the Supreme Court has often referred to this as "Eleventh Amendment immunity."[2]  Id. "Eleventh Amendment immunity" is a misnomer, however, because that immunity is really an aspect of the Supreme Court's concept of state sovereign immunity and is neither derived from nor limited by the Eleventh Amendment.  Id. Nevertheless, the term "Eleventh Amendment immunity" has been used loosely and interchangeably with "state sovereign immunity" to refer to a state's immunity from suit without its consent in federal courts. See, e.g., College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999)(using both terms), Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997)(same).  The concept of state sovereign immunity in all of its aspects has been developed by the Supreme Court through its authoritative interpretations of the Constitution based on history,

---

[2] The Eleventh Amendment provides:
The Judicial power of the United States shall not be construed to extend in any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State.
U.S. CONST. AMDT. XI.

constitutional structure, and jurisprudence. <u>Alden</u>, 527 U.S. at 712-13.

A state's immunity from suit is not absolute. <u>College Savings</u>, 527 U.S. at 670. The Supreme Court has recognized only two circumstances in which an individual may sue a State. "First, Congress may abrogate the states' immunity by authorizing such a suit in the exercise of its power to enforce the Fourteenth Amendment——an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." <u>Id.</u> (citing <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445 (1976)). "Second, a State may at its pleasure waive its sovereign immunity by consenting to suit." <u>Id.</u> (citing <u>Clark v. Barnard</u>, 108 U.S. 436 (1883)). But the decision to waive that immunity must be voluntary on the part of the sovereign. Generally, the Court will find a waiver either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a "clear declaration" that it intends to submit itself to federal court jurisdiction. <u>See College Savings</u> 527 U.S. at 675-676 (citing <u>Gunter v. Atlantic Coast Line R. Co.</u>, 200 U.S. 273, 284 (1906); <u>Great Northern Life Ins. v. Read</u>, 322 U.S. 47, 54 (1944)).

Plaintiffs contend that Texas, by removing this case from state court to federal court, voluntarily invoked federal court jurisdiction and waived its state sovereign immunity from private suit. They rely upon the Supreme Court's recognition in <u>Lapides</u>, that "removal is a form of voluntary invocation of a federal

7

court's jurisdiction" that constitutes "a waiver of Eleventh Amendment immunity." 535 U.S. at 624. On the other hand, Texas contends that the waiver-by-removal rule recognized by Lapides with respect to certain suits based on state-law claims does not apply to the plaintiffs' suit based on federal-law claims. According to Texas, that is so because: first, Lapides limits the effect of its decision to suits based on state-law claims in respect to which the state has waived its immunity in its own courts; and, second, the nature of state sovereign immunity, as implied by the Supreme Court in Alden v. Maine, 527 U.S. 706 (1999), and Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98-99 (1984), allows Texas to assert its "underlying sovereign immunity from suit in any court," even after it has waived its "Eleventh Amendment immunity from suit in federal court."

In Lapides, the plaintiff, a professor in the Georgia university system, brought suit against the university board and its officials claiming damages for defamation under state law and for deprivation of his Fourteenth Amendment right to due process under the federal civil rights act, 42 U.S.C. § 1983. 535 U.S. at 616. It was undisputed that the university board was an arm of the state and that Georgia by statute had waived its immunity from suits based on the state-law claims in state court. Id. at 617.

The board and its officials joined in removing the case to federal district court and sought dismissal. Id. at 616. The district court held that the doctrine of qualified immunity barred

8

Lapides's federal-law claims against the university officials but that the board had waived its Eleventh Amendment immunity by removing the case from state to federal court.  Id. at 617.  The board appealed the district court's Eleventh Amendment immunity ruling, and the Court of Appeals for the Eleventh Circuit reversed.[3]  251 F.3d 1372 (11th Cir. 2001).

The Supreme Court granted certiorari and reversed, concluding that the State's action of voluntarily agreeing to remove the case to federal court constituted a form of voluntary invocation of the federal court's jurisdiction and a waiver of its Eleventh Amendment immunity.[4]  Lapides, 535 U.S. at 620, 624.  The Court added, however, that because Lapides had not stated a valid federal claim against the state,[5] its decision did not address whether or how

---

[3] In the appellate court's view, as it was unclear that the state attorney general had the legal authority to waive state sovereign immunity, the board retained the legal right to assert its sovereign immunity from suit by individuals even after removal.  Lapides, 251 F.3d at 1375.

[4] 535 U.S. at 620.  The Court pointed out that removal requires the unanimous consent of all defendants.  Id. (citing 28 U.S.C. § 1446(a); Chicago, R.I. & P.R. Co. v. Martin, 178 U.S. 245, 248 (1900)).

[5] As the Court explained, Lapides did not state a valid federal claim "because Lapides's only federal claim against the State arises under 42 U.S.C. § 1983, that claim seeks only monetary damages, and we have held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted."  535 U.S. at 617 (citing Will v. Michigan Dep't of State Police, 491 U.S. 58,

9

removal would affect federal-law claims or claims in respect to which the state's underlying sovereign immunity had not been waived or abrogated in state court. Id. at 617. Nonetheless, the Court concluded that the question that prompted it to grant certiorari, "whether a state waives its Eleventh Amendment immunity by its affirmative litigation conduct when it removes a case to federal court," was not moot, because Lapides's state-law tort claims remained pending in federal district court. Id. In view of the differences of opinion among the circuit courts on the certiorari issue, the Court decided to answer the question. Id.

1.

Although the Supreme Court in Lapides circumspectly did not address any issue unnecessary to its decision, we believe that Lapides's interpretation of the voluntary invocation principle, as including the waiver-by-removal rule, applies generally to any private suit which a state removes to federal court. There is no evident basis in law or judicial administration for severely limiting those general principles, or Lapides's substantial overruling of Ford Motor Co. v. Dep't of Treasury of State of Indiana, 323 U.S. 459 (1945), to a small sub-set of federal cases including only state-law claims in respect to which a state has

66 (1989)).

waived immunity therefrom in state court.[6]  Moreover, there are
many reasons to apply those principles generally.

First, in reaching its conclusion, the Court in <u>Lapides</u>
applied a generally applicable principle of federal law based upon
a comprehensive consideration of problems associated with states'
assertions of sovereign immunity after voluntarily invoking federal
jurisdiction.  <u>Id.</u> at 619-24.  The Court in <u>Lapides</u> observed
generally that it is anomalous or inconsistent for a state to both
invoke federal jurisdiction and claim immunity from federal suit in
the same case.  <u>Id.</u> at 619.  Because permitting states to do so can
generate seriously unfair results, the Court noted that over a
century ago it had begun to develop the principle that a state's
voluntary appearance in federal court amounted to a waiver of its
immunity from suit.  <u>Id.</u>  Subsequently, the Court noted, it had
recognized that the principle applied to states' interventions,

---

[6]  This classification excludes "[t]he core of modern federal
court jurisdiction[,]cases arising under the Constitution and laws
of the United States[,]compris[ing] the largest component of the
federal courts' docket and...widely viewed as the most important
component of the federal courts' workload." Erwin Chemerinsky,
FEDERAL JURISDICTION, § 5.2.1, p. 265 (4th ed. 2003); <u>see</u> Jonathan R.
Siegel, *Waivers of State Sovereign Immunity and the Ideology of the
Eleventh Amendment*, 52 DUKE L.J. 1167, 1229 (2003) ("Although the
particular circumstances of the case may be limited, the reasoning
of the case endorses the crucial values underpinning the
traditional rule that sovereign immunity is waived if not timely
asserted.")(citing <u>Lapides</u>, 535 U.S. 613).

11

bankruptcy claims, and voluntarily becoming a party in federal court.  Id. (citing Clark, 108 U.S. at 447; Gardner v. New Jersey, 329 U.S. 565, 574 (1947); and Gunter, 200 U.S. at 284).  In Lapides, the Court decided, the state, by voluntarily agreeing to remove the case, had voluntarily invoked the federal court's jurisdiction.  Id. at 620.  Considering the judicial need to avoid inconsistency, anomaly, and unfairness, and Georgia's failure to point to any special feature of removal or of the Lapides case that would justify taking the case out from under the general rule, the Court found no reason to abandon the general principle.  Id. at 620-21.  Consequently, the Court concluded that removal is a form of voluntary invocation of federal jurisdiction that constitutes the waiver of a state's immunity from suit.  Id. at 624.

In explaining why the voluntary invocation principle could not be narrowed to exclude even the special situation in Lapides, the Court gave reasons that argue powerfully for general application of the principle and the waiver by removal rule.  Cases in which the state's motive for removal is benign cannot be excepted because "motives are difficult to evaluate, while jurisdictional rules should be clear" and making such an exception "would permit States to achieve unfair tactical advantages, if not in this case, in others."  Id. at 621.  Cases involving "suits for money damages against the State——the heart of the Eleventh Amendment's concern"——

12

must be included because the principle enunciated in <u>Gunter</u>, <u>Gardner</u> and <u>Clark</u> "did not turn upon the nature of the relief sought...[a]nd that principle remains sound as applied to suits for money damages." <u>Id.</u> at 620. Finally, the Court's more recent cases requiring "a 'clear' indication of the State's intent to waive its immunity," such as <u>College Savings</u>, do not undermine the voluntary invocation principle. To the contrary, <u>College Savings</u> "distinguished the kind of constructive waivers repudiated there from waivers effected by litigation conduct." <u>Id.</u> Although the state's intent to waive its immunity must be clearly indicated, "finding waiver in the litigation context" rests upon the "judicial need to avoid inconsistency, anomaly, and unfairness," and not upon a "State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." <u>Id.</u> Regarding waivers by removal, "[t]he relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver. And that act—removal—is clear."[7] <u>Id.</u>

---

[7] Texas argues that the present case is controlled by <u>Neinast v. Texas</u>, 217 F.3d 275 (2000), in which this court held that the state, which had been sued in federal court, did not waive its immunity by filing a 12(b)(6) motion because it did not proceed past the motion and answer stage to the merits while holding back an immunity defense. <u>Id.</u> at 279-280. <u>Neinast</u> is distinguishable and inapposite. In <u>Neinast</u> the state did not remove the case to federal court because it was filed in federal court originally. Thus, <u>Neinast</u> did not fall under the waiver by removal rule. In the present case, however, Texas's removal waived its immunity

Emphasizing that point, the Court stated:

> "[T]he rule is a clear one,... it says that removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum.

Id. at 623-624.[8]

The Court expressly limited its answer in response to the certiorari question to the context of "state law claims, in respect to which the State had waived immunity in its own courts." Id. at 617. However, in formulating its rationale, the Court did not restrict itself to facts, rules, or reasons peculiar to the Lapides case. Rather, throughout its opinion, the Court's reasoning, rule-making, and choice of precepts were derived from generally applicable principles serving "the judicial need to avoid inconsistency, anomaly, and unfairness" in states' claims of immunity in all types of federal litigation. 535 U.S. at 620.

---

under the waiver by removal rule and voluntary invocation principle explained in Lapides. Texas's assertion at the time of removal that it did not intend to defend and removed for the sole purpose of asserting sovereign immunity did not prevent waiver of that immunity by removal. The act of removal without more is sufficient to waive the state's immunity. The state's "actual preference or desire" and "benign motive" are not relevant to a waiver by removal. Lapides, 535 U.S. at 620-621.

[8] See Gil Seinfeld, *Waiver-in-Litigation: Eleventh Amendment Immunity and the Voluntariness Question*, 63 OHIO ST. L.J. 871, 875-890 (2002)(explaining the history and development of the Supreme Court's cases finding waiver of state sovereign immunity by litigation conduct).

Further, a reading of Lapides within the context of the Court's previous development and application of the voluntary invocation principle convinces us that, just as the Court concluded about the Lapides case, there is nothing special about the present case or its removal, that would justify our taking it out from under the general legal principle requiring waiver.

Second, the general applicability of the voluntary invocation principle and the waiver-by-removal rule is demonstrated by their history. As the Lapides opinion observes, "more than a century ago this Court indicated that a State's voluntary appearance in federal court amounted to a waiver of its Eleventh Amendment immunity." Id. at 619, (citing and quoting Clark, 108 U.S. at 447 ("State's 'voluntary appearance in federal court as an intervenor avoids Eleventh Amendment inquiry"); Gardner, 329 U.S. at 574 ("[A] State 'waives any immunity ... respecting the adjudication of' a [bankruptcy] 'claim' that it voluntarily files in federal court."); Gunter, 200 U.S. at 284 ("[W]here a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.")). "The Court has long accepted this statement of the law as valid, often citing with approval the cases embodying that principle." Lapides, 535 U.S. at 619 (citing College Savings, 527

U.S. at 681, n. 3 (1999) (citing Gardner); Employees of Dept. of Public Health and Welfare of Mo. v. Dep't of Public Health and Welfare of Mo., 411 U.S. 279, 294, and n. 10 (1973) (Marshall, J., concurring in result) (citing Clark); Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 276 (1959) (citing Clark)).

Until Ford, the Supreme Court fairly consistently applied the "voluntary invocation" principle, concluding that a state submits itself to federal court jurisdiction when it voluntarily appears, intervenes, files a claim, or becomes a party to a cause in federal court.[9]  Gunter, 200 U.S. at 284.  In Ford, however, the Court confused the principle by holding that a state which had voluntarily participated in litigation could, nevertheless, successfully assert its sovereign immunity objection even after the case had reached the Supreme Court.  323 U.S. at 467.

But the Supreme Court began to clarify and restore the voluntary invocation principle in Wisconsin Dep't Of Corrections v. Schacht, 524 U.S. 381 (1998).  The Court unanimously held that the

---

[9] See Siegel, *Waivers of State Sovereign Immunity*, 52 DUKE L.J. at 1167-1168 ("[P]rior to 1945, the Supreme Court—even as it enforced a broad, substantive rule of state sovereign immunity–applied a sensible doctrine of waiver that balanced the interests of states with those of private parties and the federal judicial system.... Beginning in 1945 ... new rules of waiver permitted states to abuse their immunity and waste federal judicial resources by litigating the merits of a case while holding an immunity defense in reserve."); Seinfeld, *Waiver-in-Litigation*, 63 OHIO ST. L.J. at 875-890.

16

Eleventh Amendment does not automatically destroy a federal court's jurisdiction over a claim; rather, it grants the state a legal power to assert a sovereign immunity defense, which it may raise or waive. Id. at 389 (citing Clark, 108 U.S. 436; Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985)). The Court added that unless the state raises its sovereignty objection or defense, the court can ignore it; it need not raise the defect on its own. 524 U.S. at 389 (citing Patsy v. Board of Regents of Fla., 457 U.S. 496, 515, n. 19 (1982)).

Justice Kennedy, concurring in Schacht, stated that, because no party raised it, the court had not reached or considered the argument that, by giving its express consent to removal of the case, Wisconsin had waived its Eleventh Amendment immunity. See 524 U.S. at 393 (Kennedy, J., concurring). He urged consideration of the question in some later case, however, because of the difficult problem created when the state consented to removal but then immediately raised its objection to the district court's jurisdiction based on its sovereign immunity. Id. He expressed doubts about the rule of Ford, and other cases, which had said the Eleventh Amendment bar may be asserted for the first time on appeal, so that a state sued in federal court does not waive its immunity objection simply by appearing and defending on the merits. Id. at 394. He pointed out that:

17

> In permitting the belated assertion of the Eleventh Amendment bar, we allow States to proceed to judgment without facing any real risk of adverse consequences. Should the State prevail, the plaintiff would be bound by principles of res judicata. If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal.

Id. Noticing that the Ford rule was a departure from the usual rules of waiver, Justice Kennedy maintained that by making the rule more consistent with the practice regarding personal jurisdiction the Court could prevent states from "gaining an unfair advantage." Id. at 395. Justice Kennedy suggested that the better rule had been expressed in Clark and Gardner, in which the Court adopted and applied the voluntary invocation principle.[10] Id.

One year later, the Court reaffirmed the principle that a state waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts. Justice Scalia, writing for the majority in College Savings, recognized that valid waivers of sovereign immunity may occur pursuant to the "voluntary invocation" principle. 527 U.S. 666, 682 n. 3 (citing Gardner as "stand[ing] for the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal

---

[10] Justice Kennedy also recommended overruling Ford's requirement that the state attorney who consented to the removal be authorized under state law to waive the Eleventh Amendment on behalf of the state. "[T]he state's consent [to removal] amounted to a direct invocation of the jurisdiction of the federal courts." Id. at 397.

18

courts").

During the long history of the voluntary invocation principle prior to Lapides, the Supreme Court gave no indication that the principle applied only to state-law claims or that it mattered whether the state had waived its immunity from suit in its own courts. Indeed, the problems caused by the removal of federal claims in Schacht prompted Justice Kennedy's influential concurring opinion that led to the Court's decision in Lapides. See Schact, 524 U.S. at 393-98 (Kennedy, J., concurring). Moreover, neither Justice Kennedy nor the unanimous court in Schacht expressed any interest in whether the state had waived its immunity from federal-law claims in state court. See generally, 524 U.S. 381-398. Similarly, in College Savings, the Court reaffirmed its approval of the voluntary invocation principle in its discussion of whether a state had waived its immunity from suit based on a federal-law claim. 527 U.S. 666. As in Schacht, the Court in College Savings did not advert to whether the state had waived immunity as to the claim in state court.

Third, in order to remove an impediment to its reaffirmation of the voluntary invocation principle, the Court substantially overruled its previous decision in Ford. Lapides, 535 U.S. at 614-15. In that case, the Court had held that a state could assert its immunity for the first time in the Supreme Court, although its

19

attorney general had actively participated on behalf of the state in the litigation below, because that particular state's law did not authorize its attorney general to waive the state's immunity. Ford, 323 U.S. at 459. The Court in Lapides recognized that the Ford rule conflicted with the goal of the voluntary invocation principle to eliminate problems of inconsistency in state claims of immunity after removing cases to federal court. 535 U.S. at 622-23. Further, the Court determined that the question of whether a particular form of state action amounts to waiver is a federal question that should be decided under a federal rule. Id. at 623. Accordingly, the Court concluded that a rule of federal law that finds waiver through invocation of federal court jurisdiction by an attorney authorized to represent the state in the pertinent litigation would avoid inconsistency and unfairness. Id. at 622-24. Because Ford was inconsistent with the basic rationale of the voluntary invocation principle, the Court overruled Ford insofar as it otherwise would apply. Id. at 623. This holding by the Supreme Court—that the voluntary invocation principle should be applied uniformly and consistently—lends further support for our conclusion that the principle should apply equally to state and federal claims.

Further, the Court granted certiorari in Lapides to consider the general problem caused by state removals and assertions of

immunity in both state and federal-law claim cases.  Accordingly, the Court agreed to consider the general question of whether "a state waive[s] its Eleventh Amendment immunity by its affirmative litigation conduct when it removes a case to federal court...." 535 U.S. at 617.  The Court described the division of opinions among circuits giving rise to its review by citing cases dealing with both federal and state-law claims:

> Compare <u>McLaughlin v. Board of Trustees of State Colleges of Colo.</u>, 215 F.3d 1168, 1171 (10th Cir. 2000) (<u>removal waives immunity regardless of attorney general's state-law waiver authority</u>)[emphasis added]; and <u>Newfield House, Inc. v. Massachusetts Dept. of Public Welfare</u>, 651 F.2d 32, 36, n. 3 (1st Cir. 1981) (similar); with <u>Estate of Porter ex rel. Nelson v. Illinois</u>, 36 F.3d 684, 690-691 (7th Cir. 1994) (<u>removal does not waive immunity</u>)[emphasis added]; <u>Silver v. Baggiano</u>, 804 F.2d 1211, 1214 (11th Cir. 1986) (similar); and <u>Gwinn Area Community Schools v. Michigan</u>, 741 F.2d 840, 846- 847 (6th Cir. 1984) (similar).

<u>Id.</u> at 618.  Of those five cases, two involved questions of waiver of immunity only as to federal-law claims,[11] two involved waivers only as to state-law claims,[12] and one involved waivers as to both federal and state-law claims.[13]

Finally, in cases subsequent to <u>Lapides</u>, the preponderant view

---

[11] See <u>McLaughlin</u>, 215 F.3d 1168; <u>Estate of Porter</u>, 36 F.3d 684.

[12] See <u>Gwinn Area Community Schools</u>, 741 F.2d 840; <u>Newfield House</u>, 651 F.2d 32.

[13] See <u>Silver</u>, 804 F.2d 1211.

21

of the federal courts of appeals appears to be that <u>Lapides</u>'s interpretation of the voluntary invocation principle and its waiver-by-removal rule are fully applicable to suits based on federal-law claims.

Two federal courts of appeals squarely addressed the issue and decided that a state waives its immunity from suit based on a federal-law claim by removing the case from state to federal court. <u>See</u> <u>Embury v. King</u>, 361 F.3d 562, 564 (9th Cir. 2004) ("We conclude that the rule in <u>Lapides</u> applies to federal claims as well as to state claims.... Nothing in the reasoning of <u>Lapides</u> supports limiting the waiver to the claims asserted in the original complaint, or to state law claims only."); <u>Estes v. Wyoming Dept. Of Transp.</u>, 302 F.3d 1200, 1206 (10th Cir. 2002) (explaining that by removing an ADA claim to federal court the state waived its sovereign immunity even if it removed the case solely "to challenge the jurisdiction of the federal forum.").

Other federal appellate courts demonstrated the same view in their discussions of <u>Lapides</u> and the voluntary invocation principle.[14]  <u>See</u>, <u>e.g.</u>, <u>Skelton v. Henry</u>, 390 F.3d 614, 618 (8th

---

[14]  Contrary to Texas' argument, <u>Watters v. Washington Metropolitan Area Transit Authority</u>, 295 F.3d 36 (D.C. Cir. 2002) is not apposite to the case.  It involves whether an interstate compact contained a "clear statement" waiving state sovereign immunity from suits on attorneys' liens through a general "sue or be sued" clause in its charter.  The court's remarks about waiver

Cir. 2004) (explaining, in the context of a federal claim, that "waiver in litigation prevents states from selectively invoking immunity to achieve litigation advantages" and the court therefore should focus on the state's "action in litigation ... [rather than] on the intention of the state to waive immunity"); Union Electric Company v. Missouri Dept. of Conservation, 366 F.3d 655, 659 (8th Cir. 2004) (explaining, when faced with a federal claim, that the "general rule regarding waiver" is that "when a state voluntarily invokes federal jurisdiction...[it] cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment"); New Hampshire v. Ramsey, 366 F.3d 1, 16-17 (1st Cir. 2004)(analyzing a federal claim and describing the Supreme Court's "core concern" in Lapides as being that "a state cannot selectively invoke its Eleventh Amendment immunity to gain litigation advantage"); In re: Charter Oak Associates, 361 F.3d 760, 769 (2d Cir. 2004) (explaining, in a bankruptcy case, that the "waiver-by-litigation doctrine" is driven by "fairness and consistency concerns" that override a "State's actual preference or desire"); Ku v. State of Tennessee, 322 F.3d 431, 431-35 (6th Cir. 2003) (explaining, when faced with a federal claim, that "removal is a form of voluntary invocation of a federal courts' jurisdiction

by removal were not relevant to its decision.  Id. at 42 n. 13.

23

sufficient to waive the State's ... objection to litigation of a matter ... in a federal forum"); <u>Rhode Island Department of Environmental Management v. United States</u>, 304 F.3d 31, 50, 50 n. 7 (1st Cir. 2002)[15] (describing "waiver occasioned by the state's litigating conduct" as a "well established" principle in the Circuit, and citing, inter alia, <u>Newfield House</u>, 651 F.2d 32, 36 n. 2 (finding waiver by removal)). Because of their reliance on <u>Lapides</u>'s language and principles, we infer that in a proper case these courts would apply the voluntary invocation principle as interpreted by <u>Lapides</u> and hold that a state waives immunity from private suits based on federal law claims by removing the case to federal court.

In two state-law claim cases, a situation identical to <u>Lapides</u>'s was presented; that is, the removed suits involved state-law claims in respect to which the state had waived immunity in its

---

[15] Contrary to Texas's argument, <u>Rhode Island Department of Environmental Management</u> ("RIDEM"), 304 F.3d 31, supports the conclusion that the First Circuit will apply waiver by removal to federal-law claims when it is appropriate. RIDEM, a state's arm, did not remove or voluntarily invoke federal court jurisdiction. RIDEM was forced to seek injunctive relief from federal administrative ALJ's denial of its sovereign immunity claim. <u>Id.</u> at 50. Second, a state or other alternate forum was not available to RIDEM. <u>Id.</u> Finally, RIDEM's opponent forfeited its waiver argument by failing to raise it in district court. <u>Id.</u>

24

own court.  <u>Omosegbon v. Wells</u>, 335 F.3d 668 (7th Cir. 2003); <u>Bank of Lake Tahoe v. Bank of America</u>, 318 F.3d 914 (9th Cir. 2003). Predictably, in accord with <u>Lapides</u>, those courts concluded that the states waived immunity from suit when they removed the cases to federal court.  Significantly, however, neither court indicated that it would reach a different result if the state had not waived immunity in state courts or if the case had also involved federal-law claims.

One federal court of appeals, <u>Stewart v. North Carolina</u>, 393 F.3d 484 (4th Cir. 2005), considered the removal of a state-law claim in a situation that did not fit the <u>Lapides</u> pattern.[16]  North Carolina had not waived immunity from suit on the claim in its own courts.  The Fourth Circuit found it improper to rely "exclusively" on <u>Lapides</u> because the Court in <u>Lapides</u> reserved judgment as to whether removal constituted waiver outside its exact situation. <u>Id.</u> at 490.  "Nevertheless," the Fourth Circuit stated, "the principles animating <u>Lapides</u> shed light on the issue we resolve today."  <u>Id.</u>

Accordingly, the court in <u>Stewart</u> recognized the general voluntary invocation principle established in <u>Gardner</u>, <u>Gunter</u>, and

---

[16] Initially, the plaintiffs asserted a federal claim.  On appeal, however, appellants challenged the district court decision only with respect to state-law tort claims.  <u>Stewart</u>, 393 F.3d at 487.

25

<u>Clark</u>, and proceeded to explain why <u>Lapides</u> fell under the principle but <u>Stewart</u> did not. In essence, the court found that Georgia's conduct in <u>Lapides</u> fell under the general rule requiring waiver because Georgia sought to achieve an unfair tactical advantage by regaining through removal the immunity it had abandoned previously; whereas, North Carolina in <u>Stewart</u> merely sought to "employ removal in the same manner as any other defendant facing federal claims." <u>Id.</u>

Although <u>Stewart</u> does not bind us or directly bear on removal of federal law claims, we conclude that it is not persuasive because its rationale misconstrues important principles animating <u>Lapides</u>. First, a state is not "like any other defendant" as <u>Stewart</u> maintains. A state possesses sovereign immunity that can be used "to achieve unfair tactical advantages, if not in this case, in others." <u>Lapides</u>, 535 U.S. at 614. <u>Stewart</u> thus misunderstands that the voluntary invocation principle as explained by <u>Lapides</u> rests on a concern for preventing the <u>potential</u> for unfair tactics, not just upon the need to sanction the <u>actual</u> <u>achievement</u> of an unfair tactical advantage. Permitting states to "follow their litigation interests by freely asserting both claims [i.e., both invoking federal jurisdiction and claiming immunity] in the same case could generate seriously unfair results." <u>Id.</u> at 619. Second, the Supreme Court in <u>Lapides</u> envisions the voluntary

26

invocation principle and waiver-by-removal rule as applying to all sovereigns regardless of their motives. "A benign motive ... cannot make the critical difference.... Motives are difficult to evaluate, while jurisdictional rules should be clear." Id. at 621. And finally, the waiver by litigation conduct principles are based on the "judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." Id. at 620.

In other words, the voluntary invocation principle applies generally in all cases for the sake of consistency, in order to prevent and ward off all actual and potential unfairness, whether egregious or seemingly innocuous. Thus, it is a mistake to read the general principle or the waiver-by-removal rule as focused only on specific or comparative abuses such as attempting to "regain" an "abandoned" immunity. North Carolina in Stewart, and Texas in the present case, acted inconsistently by both invoking federal jurisdiction and claiming immunity in the same case.[17] Whether Texas's conduct, in removing this case to federal court from the

---

[17] Lapides, 535 U.S. at 619 ("It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand.").

state appellate court to "regain" an immunity that its own courts had found unwarranted, is more or less unfair than Georgia's removal and reclaiming of its immunity in Lapides is not relevant. The voluntary invocation principle and the waiver-by-removal rule as explained by Lapides evolved not merely to quantify and compare actual unfair advantages but to eliminate the potential of unfairness by the enforcement of clear jurisdictional rules having genuine preventive effect.[18]

For all of these reasons, we are not persuaded by Texas's argument that Lapides must be read as limiting the ambit of the voluntary invocation principle to cases involving state-law claims with respect to which the state has waived immunity in its own courts. Of course, the Court in Lapides prudently did not address issues beyond this compass. But, as the Fourth Circuit correctly recognized in Stewart, we cannot shut our eyes when "the principles animating Lapides shed light on the issue we resolve today." 393 F.3d at 489. We conclude that the principles of voluntary invocation and waiver by removal as explained in Lapides and as facilitated by its overruling of Ford apply to the present case.

2.

---

[18] 535 U.S. at 619 ("[A] Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.").

Texas's second argument is based on a novel theory of the structure of state sovereign immunity. In essence, Texas's theory is that a state has two kinds of immunity against private suit that it may assert: (1) its basic or inherent immunity from private suit which it may assert in any court; and (2) its Eleventh Amendment forum immunity from suit in federal court. As the names imply, Texas apparently considers the first immunity to be inherent in the state's sovereignty, and the second immunity to have been confirmed by the Eleventh Amendment.[19]

Further, Texas contends, after a state waives its Eleventh Amendment forum immunity by removing a case to federal court, the state may still assert its basic or inherent immunity in the same case to have the plaintiffs' suit dismissed, if the state has not waived its immunity from suit for such a claim in state court. Therefore, under its theory, Texas contends that if a state, which has not waived its immunity as to a claim in state court, removes a suit on such a claim to federal court, even though the state thereby waived its Eleventh Amendment forum immunity by the removal, that state may still assert its inherent or basic immunity

---

[19] Texas uses the term "confirm" instead of "create." No matter how Texas contends the Eleventh Amendment is responsible for bringing about the second separate "Eleventh Amendment forum immunity," however, the effect is the same: Texas's argument is based on a state having two separate immunities from suit, one inherent, and one attributable to the Eleventh Amendment.

from suit and have the plaintiffs' suit dismissed.

Texas claims that its theory of state immunity structure is supported by two Supreme Court cases, <u>Alden v. Maine</u>*,* 527 U.S. 706 (1999)*,* and <u>Pennhurst State School v. Halderman</u>, 465 U.S. 89 (1984). But Texas does not explain how or why; Texas merely states its conclusions about the structure of sovereign immunity and points to the pages in the two opinions that it claims as authority and gives no further explanation. Thus, there are large gaps in Texas's analysis. For example, there is no explanation of how Texas's theory of duplicative immunities from suit can be derived from <u>Alden</u> and <u>Pennhurst</u>; and no effort is made to explain historically or otherwise how the Eleventh Amendment could have augmented the sovereignty of the states that antedated the Constitution and remained intact after ratification. We are left to bridge these gaps on our own, and we conclude that it cannot be done. There is no support for Texas's theory on the pages it cites or anywhere in the Supreme Court's opinions.

Moreover, there is an irreconcilable conflict between Texas's theory and the Supreme Court's rationale in <u>Alden</u>. Texas's theory is based on the idea that a state has two different immunities from suit, an inherent immunity assertable in any court, and an Eleventh Amendment immunity assertable in federal court. To the contrary, <u>Alden</u>'s rationale is that the states' sovereign immunity from suit

30

by individuals is the same immunity they enjoyed prior to the Constitution and that the states' immunity from suit was not changed, limited or added to by the Eleventh Amendment.[20] 527 U.S. at 712-14. The Court in Alden held that the States retain sovereign immunity from private suit in their own courts—an immunity beyond the congressional power to abrogate by Article I legislation—because it was preserved intact by the Constitution since its ratification, and was not created or limited by the Eleventh Amendment. Id. Thus, in Alden, the Supreme Court rejected the notion that a separate form of sovereign immunity from suit was created for the states by the Eleventh Amendment.[21] Id. at 728. Indeed, the Court maintained that the term "Eleventh Amendment

---

[20] The Court maintained that:
[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.
Id. at 713.

[21] The Court explained that "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." Id. at 728 (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-268 (1997) (acknowledging "the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as [only] evidencing and exemplifying"); Seminole Tribe [of Florida v. Florida, 517 U.S. 44,] 55-56; Pennhurst, 465 U.S. at 98-99; Ex parte New York, 256 U.S. 490, 497 (1921)).

immunity" is a misnomer because the states have no other sovereign immunity from suit than that which they brought intact into the union. Id. at 713.

In sum, the Court made clear in Alden that there is no such thing as an Eleventh Amendment immunity separate and apart from state sovereign immunity, that a state's sovereign immunity from suit is now and always has been inherent within its sovereignty, and that the Eleventh Amendment did not create any new immunity but merely overruled the Supreme Court's erroneous decision in Chisolm v. Georgia. Id. at 713-727. Consequently, Texas's argument and theory, which depend totally upon there being an "Eleventh Amendment forum immunity" separate from each state's sovereign immunity from suit, find no basis in Alden or the current view of the Supreme Court's majority.

Texas also represents that Pennhurst validates its conception and analysis of sovereign immunity by "requiring [the] State's express consent to suit in federal forum regarding claims for which underlying sovereign immunity is waived in state court." Tex. Br. at 11. This description of Pennhurst (in Texas's words, not the Court's) is so incomplete, inaccurate, and ambiguous that it obscures and misconstrues the issue decided in that case and attempts to leave the false impression that Pennhurst's ruling on a "State's express consent to suit" should apply by analogy to

32

<u>Lapides</u> and this case.

Accurately presented, however, <u>Pennhurst</u> differs from <u>Lapides</u> and this case so significantly that its interjection here is plainly inappropriate and somewhat questionable. Contrary to Texas's representation, <u>Pennhurst</u> does not say anything about "claims for which underlying sovereign immunity is waived in state court." In <u>Pennhurst</u> plaintiffs sued Pennsylvania state and county officials in federal court for Eighth Amendment violations because of conditions of a residence and school for retarded persons. 465 U.S. at 92-93. <u>Pennhurst</u> was not removed to federal court like <u>Lapides</u> and this case, for it was never in state court. Most important, <u>Pennhurst</u> did not present an issue of waiver of immunity by removal as <u>Lapides</u> and this case do. The issue in <u>Pennhurst</u> was whether a state statute amounted to a "clear declaration" that Pennsylvania intended to submit itself to federal court jurisdiction. <u>Id.</u> at 99 n. 9. The Court held that the statute did not submit the state to federal jurisdiction because it did not specifically and expressly say that Pennsylvania consented to suit in federal court. <u>Id.</u> at 99. <u>Lapides</u> and the present case are quite different. They hold that a state's removal of a case into federal court, without more, clearly demonstrates the state's consent to invoke and submit to federal jurisdiction so that the general legal principle of voluntary invocation requiring waiver of

33

immunity ought to apply.  Pennhurst is devoid of any feature that is analogous to this case or that would lend any support to Texas's theory of sovereign immunity structure.  Hence, it is inapposite, irrelevant and does not support Texas's arguments in any respect.

For these reasons, neither Alden nor Pennhurst or any of the Supreme Court's authoritative interpretations of the Constitution provide any basis of support for Texas's constitutional theory or arguments.  Instead, Texas's arguments are in conflict with the Supreme Court's decisions.  Accordingly, we conclude that Texas has failed to set forth any valid reason that we should not apply the principles explained by Lapides to the present case.

B. The Constitution Does Not Create State Sovereign Immunity or Prescribe its Scope; The Law of Each State Determines the Nature of its Immunities; Thus, it is Possible that a State May Retain a Separate Immunity from Liability after Waiver of its Immunity from Suit.

Although we find no support for Texas's theory that state sovereign immunity is composed of two separate immunities from suit, further analysis convinces us that the Supreme Court's cases support a different interpretation and conclusion, viz., that a sovereign enjoys two kinds of immunity that it may choose to waive or retain separately——immunity from suit and immunity from liability.  This concept is different from Texas's theory in several important

34

respects: (1) it is consistent with the Court's view in <u>Alden</u> that the Constitution protects but does not create the states' sovereign immunity, and that the Eleventh Amendment did not create, change or add to that immunity; (2) it is consistent with <u>Lapides</u> in that it would not allow a state to assert its immunity from suit twice in the same case; and (3) consistently with the Court's cases, it would allow a state, if its law authorizes, to waive its immunity from suit without waiving its immunity from liability.

Texas's theory that the Constitution prescribes a specific rigid structure for each state's sovereign immunity conflicts with the first principles of our federation. Because each state was considered to have retained the individual sovereignty it enjoyed before the union, the structure of the Constitution allows for variation between the nature and structure of each state's immunities from suit and liability. This is consistent with the Supreme Court's long held view that sovereign immunity is a privilege that each state may waive at its pleasure. <u>See</u> <u>College Savings</u>, 527 U.S. at 675. As a result, the patterns of sovereign immunities maintained by the states vary considerably.[22]

---

[22] <u>See</u>, <u>e.g.</u>, Matthew J. Whitten, *Fiction Becomes Reality: When will Texas Abrogate the "Catch-22" of Sovereign Immunity When it Comes to Contracts?* 37 TEX. TECH L. R. 243, 247, 260 (2004) (explaining that Arizona has waived its sovereign immunity from both suit and liability for contracts disputes, but Texas has waived its immunity from liability but not its immunity from suit

Rather than require that the states adhere to a prescribed plan, the Court's decisions envision a Constitution that affords the states discretion to waive or vary the nature and elements of their sovereign immunity.  Id.  Consequently, courts must look to the law of the particular state in determining whether it has established a separate immunity against liability for purposes of waiver.[23] Unlike a state's waiver of its immunity from  suit in federal court, the state's waiver or retention of a separate immunity from liability is not a matter in which there is an overriding federal interest justifying the application of a federal rule.[24]  For these reasons, we conclude that the Constitution permits a state whose law provides that it possesses an immunity from liability separate from

---

in such matters).  As another example, the Eleventh Circuit has explained that the Florida sovereign immunity provides immunity only from liability and not suit.  CSX Transp. Inc. v. Kissimme Utility Authority, 153 F.3d. 1283, 1286 (11th Cir. 1998).

[23] In general, "the substantive law to be applied by the federal courts in any case is state law, except when the matter before the court is governed by the United States Constitution, an act of congress, a treaty, international law, the domestic law of another country, or, in special circumstances, federal common law." 19 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4501, at 2 (2d ed. 1996)(discussing the Federal Rules of Decision Act, 28 U.S.C. § 1652 and constitutional considerations)); see Siegel, *Waivers of State Sovereign Immunity*, 52 DUKE L.J. at 1224-1225.

[24] See Lapides, 535 U.S. at 622-623; Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525 (1958); 19 Charles Alan Wright e.t. al., FEDERAL PRACTICE AND PROCEDURE § 4520 (2d ed. 1996).

its immunity from suit to show that its waiver of one does not affect its enjoyment of the other.

The foregoing principles are reflected in the Supreme Court's frequent references to sovereign immunity as affording both immunity from liability and immunity from private suits. The Court has often indicated that the purpose of state sovereign immunity is to protect the state from being held liable by its creditors as well as to safeguard it from private suits filed without its consent.

In Lapides the Court stated that "suits for money damages against the State [are] the heart of the Eleventh Amendment's concern." id. 620 More recently, the Court explained: "Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather it provides an immunity from suit." Fed. Mar. Comm'n v. South Carolina State Ports Authority, 535 U.S. 743, 766 (2002); see Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy Inc., 506 U.S. 139, 145-46 (1993)(rejecting state's argument that sovereign immunity is only a defense to liability and explaining that it is also an immunity from suit); Edelman v. Jordan, 415 U.S. 651, 662-64 (1974) (describing state sovereign immunity as protecting states against both "suits" and "liability"). Historically, the "[a]doption of the [Eleventh] Amendment responded most immediately to the States' fears that 'federal courts would force them to pay their Revolutionary War

debts, leading to their financial ruin.'" Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30, 39, 39 n. 9 (1994) (quoting Pennhurst, 465 U.S. at 151 (Stevens, J., dissenting); and citing Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 276, n. 1 (1959); Missouri v. Fiske, 290 U.S. 18, 27 (1933)); see also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979) (explaining that a goal of sovereign immunity is to protect the state's treasury).

Corroborating that sovereigns may provide for waiver of immunity from liability separately from suit immunity, one federal court of appeals has stated, in dictum, that "[c]ertainly, a state may waive its immunity from substantive liability without waiving its immunity from suit in a federal forum." New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004)(citing College Savings, 527 U.S. at 676; Atascadero, 473 U.S. at 241). Two other federal courts of appeals have held that the federal government's sovereign immunity, unlike that of the states, is a defense to liability but not an immunity from suit. See Alaska v. United States, 64 F.3d 1352 (9th Cir. 1995)(explaining, when comparing federal and state sovereign immunity, that while state sovereign immunity entitles the state to avoid litigation in a federal court, federal sovereign immunity is only a defense to liability); Pullman Construction Industries v. United States, 23 F.3d 1166 (7th Cir. 1994)(same); cf.

<u>CSX Transp.</u>, 153 F.3d. at 1286 (explaining that sovereign immunity under Florida law provides immunity only from liability and not suit).

Concurrently, there is a growing body of impressive scholarly thought favoring the view that the Supreme Court has implicitly recognized that state sovereign immunity consists of two separate and different kinds of immunity, immunity from suit and immunity from liability.[25]  We come to substantially the same conclusion.  The commentators' reading of the cases is reasonable and tends to be persuasive.  We conclude, however, that it is more appropriate to say that the Court's cases accommodate the view that the Constitution guarantees a state's prerogative, by its own law, to treat its immunity from liability as separate from its immunity from

---

[25] <u>See</u> Siegel, *Waivers of State Sovereign Immunity*, 52 DUKE L. J. at 1234 ("[S]tate sovereign immunity has two independent aspects: it is partly an immunity from suit in a particular forum (federal court) and partly a substantive immunity from liability....  [A state] may waive its forum immunity without waiving its underlying immunity from liability.  Moreover, removal should be understood to waive only forum immunity."); <u>cf.</u>, Carlos Manuel Vazquez, *Sovereign Immunity, Due Process, and The Alden Trilogy*, 109 YALE L.J. 1927, 1930 (2000)(Arguing that in <u>Alden</u> and <u>College Savings</u> the Supreme Court "rejected the 'forum-allocation' interpretation of the Eleventh Amendment, and implicitly adopted what I have called the 'immunity-from-liability' interpretation, under which the states are immune from being subjected to damage liability to individuals.")(citing Carlos Manuel Vazquez, *What is Eleventh Amendment Immunity?*, 106 YALE L.J. 1683, 1700-08 (1997)("describing the 'forum-allocation' and 'immunity-from-liability' interpretations.").

suit for purposes of waiver or relinquishment.  For these reasons, we conclude that the Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa, but that it does not require a state to do so.[26]

In sum, under the principles of federal law we have discussed, when Texas removed this case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its immunity from suit in federal court.  See Lapides, 535 U.S. 613.  Whether Texas has retained a separate immunity from liability is an issue that must be decided according to that state's law.

C. Remaining Arguments

The only matter before us is plaintiffs' appeal from the district court's ruling granting Texas's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on Texas's sovereign immunity from suit.  In the district court's rulings complained of on appeal, the court held that plaintiffs failed to establish subject matter jurisdiction by showing that Texas's sovereign immunity from suit had been either waived or abrogated. Specifically, the court ruled that (1) Texas  had not waived its

---

[26] See supra note 22.

immunity from suit by removing the case to federal court and (2) Congress had not validly abrogated Texas's immunity from suit by its enactment of ADA Title II.  We conclude, in the light of <u>Lapides</u>, that Texas waived its immunity from suit in federal court when it removed the case to federal court.  Consequently, the district court's judgment, which was rendered prior to <u>Lapides</u>, is in error in its conclusion that plaintiffs had not established subject matter jurisdiction based on waiver by removal.  Because Texas waived its immunity from suit by removal of this case to federal court, we will reverse and remand on this ground.  Thus, we need not reach or decide whether the district court erred in finding that Congress did not validly abrogate Texas's immunity from suit by ADA Title II.[27]

Furthermore, it is not necessary to address Texas's arguments in opposition to plaintiffs' <u>Ex parte Young</u> suit.  The purpose of the doctrine of <u>Ex parte Young</u> is to allow plaintiffs asserting

---

[27] Moreover, our holding in <u>Neinast v. Texas</u>, 217 F.3d 275 (5th Cir. 2000), that the ADA regulation did not validly abrogate the state's Eleventh Amendment immunity from suit does not foreclose the establishment of subject matter jurisdiction in accord with <u>Lapides</u> in the present case based on Texas's waiver of immunity by removal.  Because there was no removal in <u>Neinast</u>, and there was no abrogation issue in <u>Lapides</u>, <u>Neinast</u> does not conflict with <u>Lapides</u> or our holding in the present case.

Texas's other arguments based on <u>Neinast</u> were not raised below and are either (1) irrelevant because they pertain to the moot <u>Ex parte Young</u> question or (2) improper premature attempts to present Texas's defenses on the merits of the case, viz., Texas's Commerce Clause challenge to the ADA; and its <u>Chevron</u> challenge to the validity of the ADA regulation.

41

federal law claims to circumvent the state's sovereign immunity from suit by suing state officers instead.  <u>Home Telephone & Telegraph Co. v. City of Los Angeles</u>, 227 U.S. 278 (1913); <u>Ex parte Young</u>, 209 U.S. 123 (1908).  Because Texas has waived its immunity from suit in federal court in this case it is not necessary for the plaintiffs to invoke the <u>Ex parte Young</u> doctrine in order to prosecute their action against the defendants.  Accordingly, there is no need for us to decide whether the doctrine would have been appropriate if Texas had not waived its immunity from suit.[28]

Thus, having decided the determinative issue of this appeal—that the federal district court has subject matter jurisdiction because Texas waived its immunity from suit by removal of this case to federal court—we will not address Texas's remaining arguments, which pertain to its defenses on the merits of the case, not raised below and prematurely presented here, viz., that the five dollar fee does not violate the statute or the regulation; that the regulation is invalid under <u>Chevron</u>; and that ADA Title II and the regulation are not authorized by the Commerce Clause, as limited by the Tenth Amendment.  These matters may or may not contribute

---

[28] <u>See</u> <u>Pederson v. Louisiana State University</u>, 213 F.3d 858, 875, n. 15 (5th Cir. 2000) ("Because we determine that LSU waived its Eleventh Amendment sovereign immunity, we will not address the two alternative arguments regarding abrogation of sovereign immunity, and the doctrine of <u>Ex Parte Young</u>.").

relevantly to Texas's defenses on the merits of the case, but they can have no bearing or effect on our determination that the federal district court has subject matter jurisdiction over this case.

For these reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. We do not determine and the state is not precluded from pursuing a claim that it is immune from liability under principles of Texas sovereign immunity law, separate and apart from its waiver of its immunity from suit in federal court in this case.

IT IS SO ORDERED.