MONROE, C. J., takes no part, not having heard the argument.

---

(69 South. 146.)

No. 21306.

NATALIE OIL CO. et al. v. LOUISIANA RY. & NAV. CO.

In re LOUISIANA RY. & NAV. CO.

(May 7, 1915. On the Merits, May 10, 1915. Rehearing Denied June 28, 1915.)

*(Syllabus by the Court.)*

INJUNCTION &#9096;178—DISSOLUTION—BOND.

    Where an alleged owner of land sues out an injunction and prevents a railway company from boring oil wells on the right of way own-

ed by the defendant company, on the allegations that the railway company has only a right of way, and not a fee in the land, and that such boring is a trespass and a disturbance of the oil under the land of plaintiff adjacent to the right of way, and that he will be injured by such action, the writ of injunction so issued may be dissolved on bond, in the discretion of the district court, and the bond must be for all damages sustained by the plaintiff, should a definitive judgment be rendered against defendant in the suit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 390; Dec. Dig. &#x21DD;178.]

Action by the Natalie Oil Company and others against the Louisiana Railway & Navigation Company. Judgment for plaintiffs, and defendant applies for writs of certiorari and prohibition. Writ of mandamus granted.

See, also, 68 South. 737, ante, p. 392.

Wise, Randolph, Rendall & Freyer, of Shreveport, for relator. D. Edward Greer, of Beaumont, and Thigpen & Herold, of Shreveport (F. C. Proctor, of Beaumont, of counsel), for respondents.

### Striking Papers from Files.

SOMMERVILLE, J. Counsel for the Natalie Oil Company et al., having brought to the attention of the court that relators have attached to the argument made on their behalf, in applying to this court for a writ of prohibition or mandamus to the trial judge, a certain document which was not a part of the record of this cause in the district court, said document being signed by J. W. Marston, and which is considered to bear upon the issue presented for consideration and decision, and the court being of opinion that it can neither consider the same nor require the respondent judge to do so;

And it further appearing that counsel for the plaintiff the Natalie Oil Company have attached to their motion a counter affidavit of J. W. Marston and other documents, which form no part of the record of the district court; and, again, that counsel for relator have filed other documents in answer to those filed by counsel for plaintiff:

It is ordered that the documents signed by J. W. Marston, of dates April 17 and 24, 1915, and all other documents filed by plaintiff and defendant in this court which were not filed in this cause in the first judicial district court of Louisiana, in and for the parish of Caddo, be withdrawn from the files of the court.

### On the Merits.

The Natalie Oil Company, alleging itself to be the owner of the W. ½ of the S. E. ¼ of section 18, and the S. E. ¼ of the N. E. ¼ of section 19, township 13 north, range 10 west, and the Gulf Refining Company, alleging itself to be the lessee of said land, and in actual physical possession thereof, upon which it has drilled wells for oil, which are now producing, that it is drilling additional wells thereon, and that defendant, the Louisiana Railway & Navigation Company was granted, by a prior owner of said land, a right of way over and across said land, as appears by a copy of an act of sale made part of the petition, under which grant the said railroad company had the right only to use said property for railroad purposes, having merely a servitude on the said property for the construction of its tracks; further, that the defendants, the railway company and William Edenborn, have announced the purpose to drill for oil on said right of way, and that they are proceeding at the present time so to drill; that defendants, in using the property for the purpose of drilling for oil thereon, are committing a trespass upon petitioners' property, and will work them irreparable injury by draining oil from under their land which these petitioners alone have the right to extract; that the close proximity of the wells on the right of way of the railroad company would damage petitioners' wells and their productive capacity, which damage could not be estimated in any way—sought and obtained a writ of injunction under section 5, art. 298, C. P., which provides:

"When the defendant disturbs the plaintiff in the actual and real possession which such plaintiff has had for more than one year, either of real estate or of a real right, of which he claims either the ownership, the possession or the enjoyment," an injunction must be granted.

Defendants appeared, alleging that the title held by the railroad company to the right of way over the land in question was a title in fee simple, and asked for a dissolution of the injunction on bond. The application was denied by the district judge, for the reason, among others, that defendants could not "deliver the property in dispute in the same state in which it was at the moment of issuing the injunction," if a definitive judgment should be rendered against them, under the provisions of article 307, C. P.

A "right of way" may consist either of the fee or merely of a right of passage and use; i. e., of a servitude. Whether the one or the other is meant in any particular instance must be gathered from the instrument as a whole. But the court cannot now undertake to pass upon and decide whether the defendant railroad company has merely a servitude upon, or a title in fee to, the land in question. The decision on that point will be reserved for the trial of the cause on the merits.

Counsel for plaintiffs admit "that the substance of the jurisprudence is that a right of way grant to a railroad company is something more than a mere right of passage granted to an individual, in that it confers the sole and exclusive right of possession in the strip, which would exclude the possession of the owner of the land, that such right being in perpetuity and being exclusive, partakes, at a superficial glance, in some respects of the character of ownership of the surface," but they contend that no such grant gives to the grantee the minerals under the right of way or under the land of the grantor. And they argue that the boring of wells for oil on the right of way of the defendant company would be a trespass upon the rights of the owner and lessee of the land adjacent to the railroad's right of way.

As owner, and as lessee under an oil lease, plaintiffs have the undoubted right to bore for oil on that portion of the land owned and leased by them and not claimed by the defendant railroad company. This right is a real right; and if the defendant railroad company had undertaken to disturb either one of them in the exercise of that right, an injunction would have properly issued, restraining it from so doing. But there may be a question of whether the defendant railroad company, by drilling for oil on its right of way, has disturbed plaintiffs in the possession of their rights to drill for oil on their property, which is adjacent. Nevertheless, the allegation of plaintiffs' petition will be taken for true, that the acts of the defendants will work them injury by the draining of the oil underlying their land, to which they have an undoubted right to drill wells to obtain possession and ownership of. But, the difficulty with the articles of the Code of Practice is that they were framed at a time when the nature and existence of oil under the soil of this state was not supposed or known, and the laws were not therefore framed to meet such things and the conditions surrounding them.

In the case of Rives v. Gulf Refining Co. of Louisiana, 133 La. 178, 62 South. 623, the court held that oil and gas in the ground, outside of an artificial receptacle, as the casing of a well or pipe line, are parts of the realty underneath the surface where they lie, that the owner of the surface is the owner of the oil and gas beneath it, but that if they are strayed to the lands of another, he ceases to be the owner of them, and until they are severed from the realty they are as much a part of it as are coal or salt. Therefore the possession of the land is not necessarily possession of the oil or gas. If an adjoining, or even a distant owner, drills his own lands and takes oil or gas therefrom, and oil un-

der your land goes into his well or under his control, it is no longer yours but his.

· Under the decisions of the Supreme Court of the United States, the owner of the land has only qualified rights to the oil and gas beneath the surface—the rights to reduce them to possession and to exclude all others exercising the right on the premises—and title in him to them does not vest until he has reduced them to actual possession, either by bringing them into a' well or into a pipe line or into a tank or other receptacle in case of oil. Until that has happened, the gas or oil by natural forces may escape from his land, be reduced to possession by another, and become the latter's property.

Oil and gas have no fixed situs under a particular portion of the earth's surface within the area where they obtain. They have the power, as it were, of self-transmission. No one owner of the surface of the earth within the area beneath which the oil and gas move can exercise his right to extract from the common reservoir in which the supply is held without, to an extent, diminishing the source of supply as to which all other owners of the surface must exercise their rights.

It follows that if the defendant railway company is the owner of the fee in the land, or right of way, bought by it, it has the right to explore same for the purpose of extracting oil therefrom, and plaintiffs would be without right to disturb it or enjoin it from the exercise of that right. · Therefore a bond was properly required before the injunction issued, so as to compensate defendant in damages if it was found hereafter that oil had been extracted from beneath the land owned by the railroad company. But the difficulty in defendant's way of proving damages, owing to the peculiar character of gas and oil, which may escape from one place to another, would render the bond of little use to defendant, if a definitive judgment be rendered against plaintiffs in the suit. Defendant

could not possibly show how much oil escaped from the land owned by it into the wells of the plaintiffs, which are on all· sides of defendant's land, or right of way. It may be that there is no oil under defendant's property, and defendants would not be damaged by plaintiffs. And defendants can only prove that oil is under their property by boring for it and bringing it to the surface.

Referring to the motion to dissolve the injunction on bond, and considering the peculiar character of gas and oil, the laws referring to other matters cannot be applied too strictly to oil and gas. The injunction in this case may, as has just been noted, work what is in reality an irreparable injury to defendants; and the district court therefore, in its discretion, might have dissolved said writ on bond given by the defendants.

It is true that oil and gas could not be delivered by defendants to plaintiffs at the end of the lawsuit in the same state in which they were at the moment of issuing the injunction, if a definitive judgment should be rendered against defendants. The oil and gas were in the ground at that time, and they could not be restored thereto. Nevertheless, the damage to defendants being irreparable, the writ should have been dissolved upon the defendants giving good and sufficient security to pay plaintiffs all damages they may have sustained should a definitive judgment be rendered against defendants in the pending suit.

Upon the dissolution of the writ on bond all damages to plaintiffs caused by drilling of oil wells by defendants could be readily ascertained. It would be a simple matter to measure the oil and gas extracted through the wells bored on the right of way of the defendant company, which right of way is adjacent to plaintiffs' lands, and the bond might be increased from time to time, should it become necessary to increase it.

Article 307, C. P., evidently contemplates property in the possession of one of the par-

ties to the suit. It has no reference to property which is not in the possession of either party, and which, from its nature, cannot be delivered, at the end of a lawsuit, in the same state in which it was at the moment of issuing the injunction.

It is therefore ordered that a writ of mandamus issue herein directed to T. F. Bell, Judge of the First judicial district court in and for the parish of Caddo, La., directing him to grant the application of the defendants in the case of Natalie Oil Co. et al. v. Louisiana Railway & Navigation Co. et al., on their motion to dissolve the injunction issued therein on proper and legal bond.