### POLK et al. v. BALL.

#### No. 11259.

. Circuit Court of Appeals, Fifth Circuit.
May 7, 1945.

Lamar Polk, of Alexandria, La., for appellants.

Camden K. Staples, of Alexandria, La., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

This case involves a contest between rival claimants of a fund fixed by a jury of freeholders as just compensation for .623 of an acre of land taken in condemnation proceedings by the United States Government.[1] The condemned acreage formed part of a tract of 3.39 acres described in a deed from Kent Company, Limited, to the Alexandria & Western Railway Co., in April of 1913.

The determinative question before us is whether the deed conveyed a servitude (right-of-way) or a fee title. If only a servitude was conveyed, appellants are entitled to the fund; but if a fee title passed the judgment for appellee must be affirmed.

The record shows the following facts: In February of 1908, Kent Company, Limited, acquired from Mrs. Sallie A. Ringgold some 300 acres of land, more or less, near Alexandria, Louisiana, and as part of the consideration therefor executed its promissory note in the sum of $65,000 secured by mortgage and vendor's lien upon all of the properties conveyed to it. In April of 1913, Kent Company, Limited, executed a right-of-way deed in favor of the Alexandria & Western Railway Company, which is set out in full in the footnote.[2] On the same day that the deed was executed, Mrs. Sallie A. Ringgold executed a release of the 3.39 acres described therein from the mortgage

---

[1] The declaration of taking was filed on December 30, 1943.

[2] "State of Louisiana,
    "Parish of Rapides.
    "Be it Known and Remembered that on this the 26th day of April, A. D. 1913, before me, G. Purnell Whittington, a Notary Public, in and for the Parish of Rapides, State of Louisiana, duly commissioned and qualified according to law, personally came and appeared the Kent Company, Limited, a corporation organized under the laws of the State of Louisiana, having its domicile at Alexandria, La., herein represented by A. B. Hundley, its Vice-President, acting under and by virtue of a resolution of the Board of Directors, hereto attached and made a part hereof, who declared unto me, Notary, that for and in consideration of the price and sum of One Thousand and Seventeen and no/100 ($1,017.00) Dol-

securing the $65,000 note held by her. In the early part of 1916, Mrs. Ringgold foreclosed and bought in the properties previously sold by her to Kent Company, Limited, less such parcels thereof as Kent Company, Limited, had disposed of during its ownership and with respect to which releases were executed. Following the foreclosure proceedings, Mrs. Ringgold obtained a deficiency judgment against Kent Company, Limited, which she sold to Charles M. Waters, who, under execution proceedings thereon, bought in at public outcry numerous pieces of property belonging to Kent Company, Limited. That company, in September of 1918, in consideration of the cancellation of the balance remaining due on the judgment, ratified the sales thus made and confirmed in Waters the title to the properties thus acquired. In March of 1940, by resolution of its board of directors, the company declared that in affirming title in Waters in September of 1918 the 3.39 acres particularly described in the right-of-way deed to the Alexandria & Western Railway Company, due to mutual error and mistake, was omitted; and that in order to carry out the intention of the parties at the time, it authorized its president to quitclaim and convey unto Waters the 3.39 acres. Pursuant to said resolution, the president of Kent Company, Limited, executed a quitclaim deed to Waters, conveying the 3.39 acres. Waters, in March of 1941, sold and conveyed by warranty deed the 3.39 acres to appellants.

In May, 1944, a date subsequent to the filing of the declaration of taking and of the verdict of the jury of freeholders fixing just compensation for that part of the 3.39 acres taken by the Government, the Alexandria & Western Railway Company executed a quitclaim deed conveying the 3.39 acres to appellee, without warranty of title and without recourse even as to the return of the purchase price.

During the year 1926 or shortly thereafter the Alexandria & Western Railway Company removed its track and buildings from the 3.39 acres and at that time abandoned its use and possession.

The court below in a written opinion, in which a number of extrinsic factors not appearing in the record are weighed and considered along with the right-of-way deed, arrived at the conclusion that a fee title was conveyed to the railroad and rendered judgment in favor of appellee. This appeal followed.

---

lars cash in hand paid, and the further consideration of the advantages and benefits that will result from the building and extension of the Alexandria & Western Railway through their lands and the further consideration of the enhancement in value of the adjoining lands by the construction of said railroad, they do hereby sell, transfer, convey, and deliver with full warranty of title and subrogation to all rights and actions in warranty against all former owners and free from all encumbrances, unto the Alexandria & Western Railway Company a corporation organized under the laws of the State of Louisiana, domiciled at Alexandria, Louisiana, herein represented by I. W. Sylvester, chief engineer, acting under and by virtue of a resolution of the Board of Directors, the following described property, to-wit:

"A *right of way over and across* the following described lands, situated in the Parish of Rapides, State of Louisiana, to-wit:

"All that tri-angular portion of ground bounded on the West by Jackson Street, on the South by the lane, on the North and East by a line parallel to and twenty-five feet from the center line of the railway *as now located*. Also a certain portion of ground having a width of one hundred (100) feet and extending fifty (50) feet on each side of the center line of said railway *as now located* from Jackson Street to the Heyman property, together with a triangular portion fronting one hundred (100) feet on Texas Ave., all as appears on the plat attached hereto and made a part hereof. Total area now estimated as three and 39/100 (3.39) acres.

"And the further consideration that the said railway company shall provide and thereafter maintain the necessary cattle guards, cross roads, and cross drains, and shall when requested fence the right of way.

"To have and to hold the said property unto the said purchaser, their successors and assigns forever.

"Certificate of mortgages as required by law is waived and dispensed with, all taxes have been paid.

"Thus done and read and signed at my office in the City of Alexandria, Parish of Rapides, State of Louisiana, in the presence of me, Notary, and the undersigned competent witnesses.

    "Kent Company, Limited,
  "Per: A. B. Hundley,
      "Vice President.
  "Alexandria & Western Railway Co.,
  "Per: Ira W. Sylvester,
      "Chief Engineer."

In Louisiana a right-of-way "may consist either of the fee or merely of the right of passage and use, or servitude. Whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole. As a general rule, only a servitude is meant." Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22; Natalie Oil Co. v. Louisiana Ry. & Nav. Co., 137 La. 706, 69 So. 146; Arkansas Improvement Co. v. Kansas City Southern R. Co., 189 La. 921, 181 So. 445, 448.

It is also the rule in Louisiana that "reference to the land involved as 'right-of-way' or 'for railroad purposes' does not necessarily indicate that the intent was to convey a mere easement or servitude, but that the intention must be ascertained by construing the instrument as a whole, and that in this connection extrinsic evidence may be considered." Arkansas Improvement Co. v. Kansas City Southern R. Co., supra.

Appellants, in support of their contention that a servitude or right of passage only was conveyed by the deed in question, point to the language first contained in the description of the property conveyed, viz., "a right-of-way *over and across* the following described lands"; to the closing words in the description of the first tract of land included in the lands described, viz., "parallel to and twenty-five feet from the center line of the railway *as now located*"; to the language in the description of the second tract, viz., "having a width of one hundred (100) feet and extending fifty (50) feet on each side of the center line of the said railroad *as now located*"; and to the declaration, "that said Railway Company shall provide and thereafter maintain the necessary cattle guards, cross roads, and cross drains, and shall when requested fence the right-of-way."

Appellee on the other hand relies upon the language common to sales, viz., "do hereby sell, transfer, convey, and deliver with full warranty of title * * * the following described property, to-wit," and the habendum, "To have and to hold the said property unto the said purchasers, their successors and assigns *forever*," as showing that a fee title was conveyed.

In construing right-of-way deeds, Louisiana courts hold (1) that that construction must be given which gives effect to all of the provisions and clauses of the contract, and (2) that "it is not uncommon for the owners of land in granting servitudes thereon to use the language and form generally used in a sale of realty, coupled with qualifying clauses designating the servitude." Noel Estate, Inc. v. Kansas City Southern & Gulf R. Co., 187 La. 717, 175 So. 468, 470. The fact that the right-of-way deed recited that the vendor did "hereby sell, transfer, convey, and deliver with full warranty of title the following described property * * * to have and to hold the said property to the said purchaser, their successors and assigns *forever*," is not unusual but is a form universally used in Louisiana in the conveyance of property rights. To conclude from these clauses that a fee title was conveyed is to ignore the qualifying clauses in the description upon which appellants rely. These qualifying clauses speak strongly of a surface right. "A right-of-way over and across" denotes a servitude of passage; the references to twenty-five feet and fifty feet on each side of the center line of the railroad "as now located" indicate the conveyance of such use of the property described as was then enjoyed by the railroad.[3] The obligations imposed to construct cattle guards, cross roads, fences, etc., indicate that having granted a servitude on his property the owner sought to make it less burdensome. By such provision the benefits flowing from the building of the railroad spoken of in the deed could be the more fully enjoyed. The qualifying clauses all bespeak a charge upon the land, a servitude, not the conveyance of a fee title.

In 1926 the railroad company removed the tracks and buildings and abandoned the use and possession of the right-of-way. The abandonment is consistent with the conclusion that a servitude only had been acquired by it, and the language of the quitclaim

---

[3] In Texas & Pac. R. Co. v. Ellerbe, 199 La. 489, 6 So.2d 556, 557, the vendor sold and conveyed unto the vendee (the railroad company) "the right of way now occupied by said Company * * * as per map made by said Company * * * the right of way being one hundred feet wide." After referring to this language in the deed, the court said: "Nowhere in the instrument is found anything evidencing an intention on the part of Leonard to grant to the railroad more than an absolute right to continue to use his land for the purpose for which it was then being occupied and used by the company."

deed under which it conveyed said 3.39 acres to the appellee, viz., "without warranty of title and without recourse even as to the return of the price paid," further suggests that it seriously questioned its title.

The court below in its opinion placed great reliance upon the fact that in 1913, $1,017 was paid to Kent Company, Limited, for the 3.39 acres, and that the jury of freeholders found the value in 1944 to be only $280.35. The court said:

"* * * there is the cash payment of $1,017.00 for 3.39 acres in the year 1913. How could we say that this payment could be only for a servitude and not in full fee-simple, when in the year 1944 the accepted stipulated worth of the 3.39 acres in fee-simple is only $280.35?"

From this and from the fact that further benefits would be received by the vendor from the building of the railroad, the court below concluded that it was impossible to arrive at any other conclusion than that the fee title to the 3.39 acres was conveyed and not a mere servitude of railroad use and passage.

■ The fallacy of such reasoning lies in the fact that the grant of a right-of-way for railroad purposes ordinarily vests in the railroad company virtually exclusive possession of the property over a long term of years, depriving the grantor, for all practical purposes, of all dominion over the property; hence, the property right remaining in the vendor has little or no value. This was especially true in 1913 in those sections of the State where there had been no development for oil and gas, and where no thought was given to values arising from the production of such minerals. Under such conditions, one conveying a servitude of way for railroad purposes would attempt to realize, as nearly as possible, the full value of the property, and we may assume that the sale of a right-of-way by Kent Company, Limited, in 1913, was based upon practically the same considerations as would have attended a sale of the fee. Contrary to the statement of the court below, the $280.35 fixed by the jury in the condemnation proceedings represents the value of .623 of an acre taken from the 3.39 acres; hence, does not represent the stipulated worth in 1944 of the 3.39 acres. If .623 of an acre had a value of $280.35, the 3.39 acres should have a value of approximately $1,457.82. It would be more nearly correct, therefore, to say that upon the basis of the $280.35 valuation for the .623 of an acre in 1944, the 3.39 acres, which in 1913 had a value of $1,017, in 1944 had a value of $1,457.82.

■ The fact that Mrs. Ringgold released from her mortgage the fee title to the 3.39 acres described in the right-of-way deed, we do not deem significant. The railroad company probably would not take title unless the title was cleared of encumbrances. It was natural, therefore, that upon delivery to her of the price paid by the railroad company, Mrs. Ringgold should release the 3.39 acres from the operation of her mortgage. Of course, whatever title was acquired by the railroad company was that passed by the deed from Kent Company, Limited, not that released from the mortgage, and any reference in the instrument of release to a sale of the fee is not binding upon either Kent Company, Limited, or the railroad company, as neither was a party thereto. Standing alone, its declarations evidence no such intent by Kent Company, Limited, or by the railroad in the execution of the right-of-way deed.

Construing the instrument as a conveyance of a servitude of way or easement gives full consideration to all provisions of the deed and to the stipulation of facts entered into by and between the parties, and such construction is in harmony with the general rule in Louisiana that where a right-of-way over and across land is granted, unless there is some language in the deed that shows otherwise, only a servitude is meant.

■ Servitudes in Louisiana are extinguished by non-use over a period of ten years.[4] The abandonment of the right-of-way in 1926 and the failure of the railroad company to use the same during the ten years that followed brought about the extinguishment of the railroad company's servitude, and the land was released therefrom; hence, the appellee acquired from the railroad company in 1944 title neither to the land nor to a servitude on the land. The appellants were entitled to the fund.

The judgment appealed from is reversed, and the cause is remanded with instructions to the trial court to enter judgment in favor of the appellants.

Reversed and remanded with directions.

---

4 Louisiana Civil Code, Article 789.