# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 3, 2011

No. 11-30315

Lyle W. Cayce
Clerk

R.T. FAULK, III; COREY FARMS, L.L.C.; FAULK FARMS, INC.;
JOANNE HODGES; RIVER VALLEY PROPERTIES;
McHENRY FARMS, L.L.C.; SHERMAN SHAW; MRS. T.P. GODWIN;
WILLIAM G. NADLER; McHENRY REALTY PARTNERSHIP,

Plaintiffs-Appellees

STATE OF LOUISIANA,

Intervenor Plaintiff-Appellee

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant-Appellant

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 3:07-CV-00554

Before  SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

In this suit, Defendant-Appellant Union Pacific Railroad Co. ("Union Pacific") appeals the district court's grant of summary judgment in favor of

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 11-30315

Plaintiffs-Appellees the State of Louisiana and private landowners. For the reasons that follow, we find that the State of Louisiana is immune from suit, VACATE the grant of summary judgment in favor of the State, and REMAND for entry of a judgment of dismissal of this suit as it pertains to the State. We further VACATE the district court's grant of summary judgment on the issue of the constitutionality of Louisiana Revised Statute Section 48:394, and REMAND in order for the district court to more fully develop the record regarding the property interests at issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 22, 2007, Plaintiffs-Appellees R.T. Faulk, III, Corey Farms, LLC, Faulk Farms, Inc., Joanne Hodges, River Valley Properties, McHenry Farms, LLC, Sherman Shaw, Mrs. T.P. Godwin, William P. Nadler, and McHenry Realty Partnership filed suit against Defendant-Appellant Union Pacific in Louisiana state court, seeking declaratory and injunctive relief to prevent Union Pacific from closing ten private railway crossings over an approximately five-mile section of track in Ouachita Parish, Louisiana, and to require that Union Pacific reopen the crossings it had already closed. The plaintiffs alleged that they or their predecessors in interest had used the crossings continuously since rights-of-way over their properties were granted to Union Pacific's predecessors in the 1880s. The plaintiffs claimed that the closures would significantly burden them and impair their title to their lands beyond the limits of the rights-of-way that had been granted to Union Pacific's predecessors in title.

Union Pacific removed the case to the Western District of Louisiana on the basis of diversity jurisdiction and filed a counterclaim against the plaintiffs, seeking declaratory and injunctive relief permitting it to close the private crossings, and preventing the private landowner plaintiffs from interfering in the closures and from creating new crossings. The railroad then filed a motion

No. 11-30315

for summary judgment in January 2008, arguing that the plaintiffs had not provided sufficient proof of their ownership of the land to establish their right to the crossings. After the parties had briefed the issue, the case was stayed pending the outcome of this Court's decision in *Franks Investment Co. v. Union Pacific Railroad Co.*, 593 F.3d 404 (5th Cir. 2010) (en banc). Once this Court issued its opinion in *Franks*, holding that a state-law action against a railroad regarding use of private crossings was not preempted by federal law, *see* 593 F.3d at 415, the district court lifted the stay in this case and litigation resumed.

While the case was stayed, the Louisiana Legislature enacted Act No. 530, codified at Louisiana Revised Statutes Section 48:394 ("Section 48:394"), requiring that all railroad companies obtain permission from the Louisiana Public Service Commission ("LPSC") before closing or removing a private railroad crossing. Section 48:394 went into effect on August 15, 2008,[1] and sets out a procedure that a railroad must follow when it wishes to close a public crossing. Originally, a railroad had to convince the LPSC that "closure or removal" of the particular crossing was "necessary for safety and in the best interests of the public." 2008 La. Acts. 530, § 1. Based on this Court's ruling in *Franks*, the Louisiana Legislature amended Section 48:394 with Act 858 to change the standard for closing a crossing to "unreasonably burdens or substantially interferes with rail transportation."[2]

---

[1] Section 48:394 was enacted on June 30, 2008, which is the date the district court used in determining whether the statute applied to the closure of a private crossing, rather than using the statute's effective date. However, as the district court noted, "the record indicates that no crossings were closed after this lawsuit was filed on January 22, 2007; therefore, the effective date does not change the [district court's] analysis or disposition of the claims in this matter."

[2] The statute, in its current form, reads as follows:

    A.    (1) Any railroad company operating in this state which desires to close or remove a private crossing shall, no less than one hundred eighty days prior to the proposed

3

No. 11-30315

Union Pacific's motion for summary judgment was reopened on March 2, 2010.  The plaintiffs filed a corrected, amended, and restated answer to Union

---

> closing or removal, provide a written request by registered or certified mail to the Louisiana Public Service Commission and to the owner or owners of record of the private crossing traversed by the rail line. The written request shall state the manner in which such private railroad crossing unreasonably burdens or substantially interferes with rail transportation.
>
> (2) The Louisiana Public Service Commission shall publish the written request from the railroad company in the commission's official bulletin for no less than twenty-five days.
>
> B. No private crossing shall be closed or removed by any railroad company until after a public hearing by the Louisiana Public Service Commission at which parties in interest have had an opportunity to be heard. Notice of the time and place of the hearing shall be published in the official journal of the parish and the commission's official bulletin and at least fifteen days shall elapse between the publication and the date of the hearing. In addition to notice by publication, and at least ten days prior to the hearing, a good faith attempt to notify the owner or owners of record of the property where the private crossing is located shall be made by the commission by sending an official notice by registered or certified mail of the time and place of the hearing to the address or addresses indicated in the mortgage and conveyance records of the parish. The public hearing shall be held not less than sixty days after receipt of request of the railroad company as provided in Subsection A of this Section.
>
> C. If, after such public hearing, the commission determines that the private railroad crossing unreasonably burdens or substantially interferes with rail transportation, the commission shall publish in the official journal of the parish where such crossing is located and in the commission's official bulletin a notice stating the manner in which such closure or removal shall be made and the date of such.
>
> D. The provisions of this Section shall not apply when a private landowner or landowners and a railroad company enter into a consensual or negotiated written agreement or agreements to close a private railroad crossing.

La. Rev. Stat. § 48:394.

No. 11-30315

Pacific's counterclaim, asserting Section 48:394 as designating the appropriate venue and procedure for resolving disputes over the removal of crossings. The parties filed supplemental briefs on Union Pacific's motion for summary judgment, and on August 22, 2010, the district court issued its ruling. The district court held that it did not need to rule on plaintiffs' state property-law claims as to crossings in existence on or after June 30, 2008, when Section 48:394 became law, because the statute "specifies the manner and venue in which disputes about the closure of private railroad crossings must be resolved, regardless of who owns the property." As to crossings closed prior to the enactment of Section 48:394, the court ruled that certain plaintiffs who claimed to be lessees did not have standing to sue for declaratory and injunctive relief regarding ownership and possessory rights to the private crossings. Plaintiffs who claimed to be owners, however, had raised genuine disputes of material fact for trial.

In its ruling, the district court also stated its intent to grant summary judgment *sua sponte* in favor of the plaintiff landowners on certain of their requests for relief, while giving Union Pacific time to file a memorandum in opposition before issuing a final decision. The district court indicated it would rule that Union Pacific had only rights-of-way through the land at issue. It also stated that it would declare that any crossing closures that occurred on or after June 30, 2008 were improper because Section 48:394 required that Union Pacific apply to the LPSC for authorization to close private crossings. The court reserved for trial a ruling as to whether the crossing closures that occurred before June 30, 2008 were improper.

The district court also gave notice that it would *sua sponte* grant the plaintiff landowners' request for a permanent injunction preventing Union Pacific from closing any private crossings without first going through the process outlined in Section 48:394. The court intended to *sua sponte* grant plaintiffs

5

conditional injunctive relief regarding private crossings that were closed on or after June 30, 2008, as well, requiring that Union Pacific either reopen them or apply to the LPSC for permission to close them within 30 days of the court's judgment.

Finally, the district court addressed Union Pacific's counterclaim. The district court stated that it intended *sua sponte* to dismiss the railroad's request for declaratory relief as to any crossings existing or closed on or after June 30, 2008, and to dismiss its request for injunctive relief prohibiting the plaintiffs from interfering with the closure of any crossings. The court found that under Section 48:394 the district court was no longer the appropriate forum for Union Pacific's claims. As to crossings closed before June 30, 2008, the court reserved for trial Union Pacific's request for declaratory relief. The district court also indicated that it intended to deny Union Pacific's request for an injunction preventing the plaintiff landowners from constructing any more crossings without the railroad's consent, because there was no evidence indicating that the plaintiffs would do so.

Union Pacific and the plaintiff landowners both filed briefs in response to the district court's ruling, and Union Pacific also filed a motion for reconsideration. In addition, Union Pacific issued a summons to the Attorney General of Louisiana because the railroad had filed a notice of constitutional challenge regarding Section 48:394. Consequently, while reserving its sovereign immunity under the Eleventh Amendment, the State filed a motion to intervene, an intervenor complaint, and a brief in opposition to Union Pacific's motion for partial summary judgment.

Once briefing was complete, the district court issued a ruling denying Union Pacific's motion for summary judgment as to any claims or defenses based on Section 48:394, denying the railroad's motion for reconsideration, and enjoining Union Pacific from closing any of the plaintiffs' existing crossings

No. 11-30315

without authorization from the LPSC, pursuant to Section 48:394. The court also dismissed with prejudice Union Pacific's request for declaratory relief as to any existing crossings, and its request for injunctive relief preventing the plaintiffs from interfering with the closure of private crossings. In addition, the district court dismissed without prejudice Union Pacific's request for an injunction preventing the plaintiffs from constructing more private crossings without the railroad's consent.

After receiving the district court's ruling, Union Pacific made a motion for certification of parts of the judgment as immediately appealable under 28 U.S.C. § 1292(b). The district court granted the motion, and we permitted an interlocutory appeal to be taken from the order. *See* 28 U.S.C. § 1292(b).

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo and applies the same standard as the district court. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Under that standard, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court construes all the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010) (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009)). We also review issues of law, such as whether a state is entitled to sovereign immunity, de novo. *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011).

## III. ANALYSIS

Though the parties in this case raised multiple claims and counterclaims in the district court, the district court certified three questions for this interlocutory appeal:

No. 11-30315

(1)    Is Louisiana Revised Statute 48:394 ("the Act") constitutional under the United States and Louisiana Constitutions?

(2)    Is the Act preempted by federal law?

(3)    Does the Act apply to the private railroad crossings in this case?

The parties agree that the only issue on appeal is whether or not Section 48:394 authorizes a taking of Union Pacific's private property without public purpose in violation of the Louisiana Constitution's takings clause. Thus, we need consider only the first and third questions from the district court; any arguments regarding preemption have been waived, and that question is not before us. *See Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 343 n.3 (5th Cir. 2002). The district court held that Section 48:394 does not permit an unconstitutional taking under the Louisiana Constitution because (1) Union Pacific had not proven its ownership of the property in question, and (2) even if Union Pacific possesses ownership rights over the property, Section 48:394 does not cause a "substantial interference" with the railroad's use and enjoyment of its property. On appeal, Union Pacific argues that the district court incorrectly applied Louisiana takings law, and that Section 48:394 is unconstitutional as applied to the ten crossings at issue in this case. The State of Louisiana and the private landowner plaintiffs counter that the State's sovereign immunity under the Eleventh Amendment bars Union Pacific's state-law claim against Louisiana and its officials. The private landowners also urge this Court to affirm the district court's judgment as to the constitutionality of Section 48:394.

We first take up Louisiana's claim that it enjoys sovereign immunity from Union Pacific's suit. "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002) (citation omitted); *Meyers ex*

No. 11-30315

*rel. Benzing v. Texas*, 410 F.3d 236, 240–41 (5th Cir. 2005).[3]  As we more fully set out in our opinion also issued today in a companion case, *Union Pacific Railroad Co. v. Louisiana Public Service Commission, et al.*, No. 10-31241, a state may waive its Eleventh Amendment immunity.  *Lapides*, 535 U.S. at 618; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997).  To be valid, such a waiver must be unequivocal, and the state must voluntarily invoke federal jurisdiction.  *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985) (stating that an "unequivocal indication" is generally required before a waiver of immunity will be found); *Lapides*, 535 U.S. at 622 ("This Court consistently has found a waiver when a State's attorney general, authorized ... to bring a case in federal court, has voluntarily invoked that court's jurisdiction."); *Benzing*, 410 F.3d at 249 (stating that "the voluntary invocation principle applies generally in all cases").  Therefore, in deciding whether or not a state has waived its sovereign immunity, we must determine if the state voluntarily invoked or submitted to federal jurisdiction through its conduct in the district court.

Here, as Union Pacific argues, it is true that Louisiana voluntarily intervened in the suit between the private landowners and the railroad. However, the State did so only after being summonsed to federal court.  The summons notified the Attorney General of Louisiana that "[a] lawsuit has been filed against [him]," and that he "*must* serve on the plaintiff an answer." (Emphasis added).  If he failed to do so, "judgment by default [would] be entered against [him] for the relief demanded."  Thus, Louisiana never voluntarily invoked federal court jurisdiction.  In addition, Louisiana makes no claims of its own in this case, and merely defends against Union Pacific's challenge to the

---

[3] The terms "state sovereign immunity" and "Eleventh Amendment immunity" are often used interchangeably to mean the same thing. *Benzing*, 410 F.3d at 240, 251–52; *see also Watson v. Texas*, 261 F.3d 436, 440 n.4 (5th Cir. 2001).

9

constitutionality of Section 48:394.  *Cf. Clark v. Barnard*, 108 U.S. 436, 447-48 (1883) (holding that a State's voluntary intervention in a federal-court action to assert its own claim constituted a waiver of immunity); *Biomedical Patent Mgmt. Corp. v. Cal., Dept. of Health Servs.*, 505 F.3d 1328, 1333 (9th Cir. 2007) (stating that "it is clear that, by intervening and asserting claims against BPMC in the 1997 lawsuit, DHS voluntarily invoked the district court's jurisdiction and, thus, waived its sovereign immunity for purposes of that lawsuit").

Furthermore, in its motion to intervene and its intervenor complaint, the State expressly reserved its immunity: "The State does not hereby waive its Eleventh Amendment sovereign immunity."  If forcing the State to intervene could compel a waiver of sovereign immunity, any plaintiff could "essentially nullify the Eleventh Amendment" by raising a state constitutional challenge in federal court.  *Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 584 F.Supp.2d 1367, 1372 (S.D. Ga. 2008) (ruling there was no waiver of immunity where the plaintiff filed an in rem suit against the State's property in federal court, "thereby forcing the State to intervene"), *aff'd on other grounds by Aqua Log, Inc. v. Georgia*, 594 F.3d 1330 (11th Cir. 2010).  Louisiana has made it clear that it "does [not] intend to become ... a party to this litigation for the purposes of any damages," and that it "merely intervenes herein for the express purposes of being heard on the challenged constitutionality of [Section 48:394]."  Accordingly, we find that Louisiana retains its Eleventh Amendment immunity, and is immune from any suit by Union Pacific.

However, a finding that the State of Louisiana is immune from suit does not lead to a finding that this appeal should be dismissed in its entirety, because the State's immunity does not extend to the action between Union Pacific and the private landowners.  *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against one of the United States...*") (emphasis added).

No. 11-30315

As stated *supra*, the district court held that Union Pacific had not proven its ownership rights over the rights-of-way at issue here. Therefore, the district court "reserve[d] for trial the question of whether Union Pacific possesses ownership rights in its rights of way, as there are genuine issues of material fact that preclude judgment on this matter." The district court went on to hold, however, that "[e]ven assuming that Union Pacific possesses ownership rights affected by the Act, its unconstitutional-taking claim still fails."

It is a basic tenet of American jurisprudence "that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Camreta v. Greene*, __ U.S. __, 131 S.Ct. 2020, 2031 (2011) (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)). Here, if Union Pacific does not have ownership rights over the property at issue, then there would be no need to reach the question of whether or not Section 48:394 results in an unconstitutional taking, as a prerequisite for such a claim is the existence of private property capable of being taken. The district court recognized this fact, writing that "[i]f Union Pacific does not possess ownership rights in the property disputed in this matter, then the Act cannot authorize a taking of Union Pacific's 'right to exclusive dominion and control over that property.'" (quoting Union Pacific's Opposition to *Sua Sponte* Judgment). However, the district court went on to make unnecessary findings as to the constitutionality of Section 48:394, based on an assumption regarding Union Pacific's ownership rights. In this action, Union Pacific brings an as-applied challenge to Section 48:394. Therefore, a finding that the Act is valid under hypothetical circumstances, rather than the actual circumstances at issue here, is improper in the context of this case.

"For an appeal under 28 U.S.C. § 1292(b), we may 'address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court'." *Melder v. Allstate*

11

*Corp.*, 404 F.3d 328, 331 (5th Cir. 2005) (quoting *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).  Because the district court held that Union Pacific had not yet proven its property rights, and the statute can only apply if Union Pacific has ownership of the crossings, the question whether Union Pacific owns the property is an issue "fairly included within the certified order." *Id.*  For the reasons discussed above, answering that question is also a necessary precursor to any consideration of the statute's relevance here and its constitutionality.  Accordingly, we decline at this time to answer the certified questions regarding the constitutionality of Section 48:394 and its applicability to the private railroad crossings in this case.  We further vacate the district court's holding that Section 48:394 is constitutional, and remand for a determination of the respective property rights of the private landowners and Union Pacific to the private railroad crossings at issue.  Should the district court find that Union Pacific has ownership rights over the railroad crossings, the record will be sufficiently developed at that time to permit a ruling regarding the constitutionality of Section 48:394.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the State of Louisiana is entitled to immunity, VACATE the summary judgment granted in  favor of the State, and REMAND for entry of a judgment of dismissal of Union Pacific's suit against the State.  We further VACATE the district court's ruling that Louisiana Revised Statute Section 48:394 is constitutional, and REMAND for a full determination of the respective property rights of Plaintiffs-Appellees R.T. Faulk, III, Corey Farms, LLC, Faulk Farms, Inc., Joanne Hodges, River Valley Properties, McHenry Farms, LLC, Sherman Shaw, Mrs. T.P. Godwin, William P. Nadler, and McHenry Realty Partnership, and Defendant-Appellant Union Pacific Railroad.