# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30669

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2014

Lyle W. Cayce
Clerk

R.T. FAULK, III, COREY FARMS, L.L.C.; FAULK FARMS,
INCORPORATED; JOANNE HODGES; RIVER VALLEY PROPERTIES;
MCHENRY FARMS, L.L.C.; SHERMAN SHAW; T. P. GODWIN; WILLIAM
G. NADLER; MCHENRY REALTY PARTNERSHIP

Plaintiffs-Appellees

v.

UNION PACIFIC RAILROAD COMPANY

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:07-CV-554

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

This case concerns a dispute over the proposed closing of several private railroad crossings in Louisiana. The district court determined that the railroads have a servitude, rather than fee-simple ownership, over the land. It then certified to this court the question of whether a Louisiana statute

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30669

preventing the railroads from closing the private crossings violates the Louisiana Constitution's prohibition on takings. We conclude that this question should be certified to the Louisiana Supreme Court.

I.    Procedural History

This dispute arose after the Defendant, Union Pacific Railroad Company ("Union Pacific), proposed closing several private railroad crossings, and did in fact close one, in Ouachita Parish, Louisiana. The Plaintiffs are the owners or lessees of farmland that is adjacent to these ten crossings. There is some disagreement between the parties over whether the Plaintiffs can access their farmland absent use of these crossings.

In 2008, the Louisiana legislature passed a statute regarding railroads' ability to close and remove private crossings, 2008 La. Acts 530, § 1, LA. REV. STAT. ANN. § 48:394 (2008) ("2008 Act"). The statute prohibited railroads from closing or removing any private crossing unless the railroad gave 180 days' advance notice and convinced the Louisiana Public Safety Commission ("LPSC") that the action was "necessary for safety and in the best interest of the public." *Id.* In 2010, we held that federal law preempts state regulation of private crossings that "unreasonably burden[s] or interfere[s] with rail transportation." *Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 414 (5th Cir. 2010) (en banc). The Louisiana legislature subsequently amended the 2008 Act to replace the safety/best-interests standard with a prohibition on closing or removing a private crossing unless the railroad company can convince the LPSC that the specific crossing at issue "unreasonably burdens or substantially interferes with rail transportation." 2010 La. Acts 858, amending LA. REV. STAT. ANN. § 48:394(C) (2010) ("the Act").[1] In doing so, the

---

[1] The statute, in its current form, reads as follows:

A. (1) Any railroad company operating in this state which desires to close or remove a private crossing shall, no less than one hundred

No. 13-30669

Act attempts to balance the rights of the railroad company and the owners of private crossings by ensuring that the railroad companies do not unilaterally close private crossings unless doing so is necessary for the railroads to continue operating free from substantial burdens. *See id.*

The Plaintiffs sued Union Pacific in 2007 in Louisiana state court seeking a declaration of their rights to use the crossings and injunctions preventing Union Pacific from closing or removing certain existing private

---

eighty days prior to the proposed closing or removal, provide a written request by registered or certified mail to the Louisiana Public Service Commission and to the owner or owners of record of the private crossing traversed by the rail line. The written request shall state the matter in which such private railroad crossing unreasonably burdens or substantially interferes with rail transportation.

    (2) The Louisiana Public Service Commission shall publish the written request from the railroad company in the commission's official bulletin for no less than twenty-five days.

    B. No private crossing shall be closed or removed by any railroad company until after a public hearing by the Louisiana Public Service Commission at which parties in interest have had an opportunity to be heard. Notice of the time and place of the hearing shall be published in the official journal of the parish and the commission's official bulletin and at least fifteen days shall elapse between the publication and the date of the hearing. In addition to notice by publication, and at least ten days prior to the hearing, a good faith attempt to notify the owner or owners of record of the property where the private crossing is located shall be made by the commission by sending an official notice by registered or certified mail of the time and place of the hearing to the address or addresses indicated in the mortgage and conveyance records of the parish. The public hearing shall be held not less than sixty days after receipt of request of the railroad company as provided in Subsection A of this Section.

    C. If, after such public hearing, the commission determines that the private railroad crossing unreasonably burdens or substantially interferes with rail transportation, the commission shall publish in the official journal of the parish where such crossing is located and in the commission's official bulletin a notice stating the manner in which such closure or removal shall be made and the date of such.

    D. The provisions of this Section shall not apply when a private landowner or landowners and a railroad company enter into a consensual or negotiated written agreement or agreements to close a private railroad crossing.

LA. REV. STAT. § 48:394.

3

crossings.      After removing the case to federal court, Union Pacific counterclaimed, seeking a declaration of its rights to eliminate the crossings. After the 2008 Act was passed, the Plaintiffs asserted it as a defense to Union Pacific's counterclaims.      Union Pacific responded that the Act could not be applied because it would effect an unconstitutional taking of Union Pacific's property without a public purpose in violation of Article I, Section 4 of the Louisiana Constitution.      The district court granted summary judgment to Union Pacific against the claims made by Plaintiffs who were only lessees respecting closures that occurred before the passage of the Act, but denied Union Pacific summary judgment on all other claims. *Faulk v. Union Pac. R.R. Co.*, CIV.A. 07-0554, 2010 WL 3325704, at *4–6 (W.D. La. Aug. 23, 2010) *vacated and remanded*, 449 F. App'x 357 (5th Cir. 2011) (unpublished).      The district court thereafter granted summary judgment for the remaining Plaintiffs. *Id.* at *8–9.   In doing so, it recognized that the railroads had some possessory rights affected by the Act, but rejected, on rehearing, Union Pacific's argument that the Act effects a taking in violation of the Louisiana Constitution. *Faulk v. Union Pac. R.R. Co.*, CIV.A. 07-0554, 2011 WL 777905, at *13 (W.D. La. Mar. 1, 2011).   Union Pacific was enjoined from closing existing crossings without first complying with the Act.  *Id.* at *18.

After making this determination, the district court granted Union Pacific's motion under 28 U.S.C. § 1292(b), and this court permitted Union Pacific to file an interlocutory appeal to our court.   We permitted the interlocutory appeal, but reversed and remanded for further proceedings because the district court had decided the constitutional question without first deciding the parties' respective property rights regarding the crossings and the rights-of-way. *Faulk v. Union Pac. R.R. Co.*, 449 F. App'x 357, 364 (5th Cir. 2011) (unpublished).   On remand, the district court concluded that Union Pacific has real property interests in the nature of servitudes, rather than fee

simple. *Faulk v. Union Pac. R.R. Co.*, CIV.A. 07-0554, 2013 WL 1193069, at *5–7 (W.D. La. Mar. 22, 2013). The district court did not decide the state law question of whether such servitudes give Union Pacific the right to exclude Plaintiffs from the pre-existing crossings. In a footnote, the district court once again rejected Union Pacific's argument that the Act's prohibition against removal or closure of the private crossings on the rights-of-way would effect an unconstitutional taking. *Id.* at *6 n.6.

After the district court granted partial summary judgment in favor of the Plaintiffs, Union Pacific moved for interlocutory appeal. The district court once again granted the motion for interlocutory appeal, certifying the following questions of law to this court: (1) "If Union Pacific does not have ownership rights to the private railroad crossings, does it have standing[2] to challenge Louisiana Revised Statute 48:394 ("the Act")? (2) If so, is the Act constitutional under the United States and Louisiana Constitutions?"[3] We granted the interlocutory appeal.

II.    The Certified Order

We begin by noting that, despite the parties limiting their briefing to the questions certified by the district court, it is the certified *order,* not merely the questions in a vacuum, over which we have jurisdiction on this interlocutory appeal. *See Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398 (5th Cir. 2010) (en banc); *see also Yamaha Motor Corp. v. Calhoun*, 516 U.S.

---

[2] The parties failed to brief this standing question, but we must address it due to its jurisdictional dimensions. *Okpalobi v. Foster*, 244 F.3d 405, 430 (5th Cir. 2001). We conclude that Union Pacific's ownership of a servitude constitutes a sufficient right to confer standing in this case. *See Polk v. Ball*, 149 F.2d 263 (5th Cir. 1945); *see also Parkway Dev. Corp. v. City of Shreveport*, 342 So. 2d 151, 153–54 & n.2 (La. 1977).

[3] Despite the reference to the United States Constitution in this question, Union Pacific has briefed only the Louisiana constitutional question. We thus deem the question under the federal constitution waived. *See Bridas SAPIC v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003).

199, 205 (1996). "Section 1292(b) limits this court's jurisdiction over interlocutory appeals to reviewing questions that are material to the lower court's certified order." *Castellanos-Contreras*, 622 F.3d at 398 (citation and internal quotation marks omitted). Therefore, we are not limited to the controlling question, especially where the issues outside the question provide grounds for reversal of the entire order. *Id.*; *see also Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976, 983 n.16 (5th Cir. 1985).

Included in the order is the determination that Union Pacific's rights are those of a servitude, rather than fee simple ownership. *Faulk*, 2013 WL 1193069, at *5–7. Union Pacific did not brief this point beyond a footnote stating that this conclusion was in error. However, at oral argument, Union Pacific asserted that its arguments were unaffected by the nature of the right (servitude or fee) and thus was willing to have us address the validity of the title determinations as they stand. We thus AFFIRM the district court's conclusion that Union Pacific's rights are those of a servitude, not a fee simple.

III.    Louisiana Takings Claim

The State of Louisiana intervened in this case to defend the constitutionality of the Act. It argues to our court that the following question should be certified to the Louisiana Supreme Court: "Whether the application of LA. REV. STAT. § 48:394 to the properties in this case amounts to an unconstitutional taking of private property without a public purpose, in violation of Art. I, Section 4 of the Louisiana Constitution." The other parties agree that certification is appropriate.

We have previously held that where the case "presents a significant question of Louisiana law . . . for which we find no controlling precedent," it is proper to certify the question to the Supreme Court of Louisiana. *Sincox v. Blackwell*, 672 F.2d 423, 423 (5th Cir. 1982). Louisiana Supreme Court Rule XII provides for certification to that court when there are state law questions

determinative of issues before us, and "there are no clear controlling precedents in the decisions of the supreme court." § 1. We have noted that that "certification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state . . . [but] certification may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed." *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (citation and internal quotation marks omitted) (internal alteration omitted).

The Supreme Court has previously stated that "[w]hen anticipatory relief is sought in federal court against a state statute, respect for the place of the States in our federal system calls for close consideration of that core question." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997). The benefit of certification is to allow federal courts "faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." *Id.* at 76. The Court further stated that "[w]arnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error." *Id.* at 79.

This appeal involves only questions of state law, and the constitutionality of the state statute has not been addressed by any state appellate court. Louisiana has an extensive regulatory framework regarding railroads in general, *see* LA. REV. STAT. §§ 45:321–621, and railroad crossings in particular, *see* LA. REV. STAT. §§ 32:168–75, 33:3701–05, 48:386–94. The Act specifically establishes administrative procedures for the closure of private crossings. Furthermore, we have previously held that the care of grade crossings is "peculiarly within the police power of the states." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 333 (5th Cir. 2008) (quoting *Lehigh*

*Valley R.R. Co. v. Bd. of Pub. Util. Comm'rs*, 278 U.S. 24, 35 (1928)). An anticipatory determination on the constitutionality of this statute could unsettle the complex and well-developed regulatory framework put into place by the Louisiana legislature, as well as cause friction in how railroad rights are adjudicated between state and federal court. *See Arizonans for Official English*, 520 U.S. at 75. Therefore, we conclude that certification is appropriate to allow the highest state court to consider in the first instance whether its own statute should be invalidated as violative of its own constitution.

IV. CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF THE STATE OF LOUISIANA, PURSUANT TO LA. REV. STAT. § 13:72.1 AND RULE 12 OF THE RULES OF THE LOUISIANA SUPREME COURT

It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this court involves a question or proposition of the law of the State of Louisiana, which will be determinative of all or most issues in this cause, which is beyond the province of this court to resolve, and for which there appears to be no clear, controlling precedent in the decisions of the Supreme Court of Louisiana. The answer to this question will resolve all or a substantial part of this case. This court certifies the following question of law to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning such question of Louisiana law, such case being on appeal to this court from the United States District Court for the Western District of Louisiana.

STYLE OF THE CASE

The style of the case is R. T. FAULK, III; COREY FARMS, L.L.C.; FAULK FARMS, INCORPORATED; JOANNE HODGES; RIVER VALLEY PROPERTIES; MCHENRY FARMS, L.L.C.; SHERMAN SHAW; T. P.

No. 13-30669

GODWIN; WILLIAM G. NADLER; MCHENRY REALTY PARTNERSHIP, Plaintiffs – Appellees, v. UNION PACIFIC RAILROAD COMPANY, Defendant – Appellant.

STATEMENT OF THE FACTS

A complete statement of the facts in this case, the nature of the cause, and the circumstances out of which the questions or propositions of law arise is set forth in full above and therefore are not repeated in this certification.

QUESTION FOR THE SUPREME COURT OF LOUISIANA

For the above stated reasons, we hereby certify the following determinative question of Louisiana law to the Supreme Court of Louisiana: "Whether the application of LA. REV. STAT. § 48:394 to any of the properties in this case amounts to an unconstitutional taking of private property without a public purpose, in violation of Art. I, Section 4 of the Louisiana Constitution." To the extent the Court deems appropriate, we include within this question the related issue of to what extent a railroad enjoys exclusive rights in any of the existing crossings, particularly against the servient estate. We disclaim any intent to limit the Court to the precise question asked.